Filed Nov. 9, 1893.

◆

No. 16,400.

THE INDIANAPOLIS NATURAL GAS COMPANY *v.* KIBBEY, TRUSTEE.

|135|357|
|157|661|

|135|357|
|159|256|
|159|476|

|135|357|
|162|397|

CONTRACT.—*Signing and Acknowledging by Party of First Part.—Acceptance and Recording by Party of Second Part.—Real Estate.*— Where a written instrument concerning the use of real estate has been signed and acknowledged by the party of the first part, but is not signed or acknowledged by the party of the second part, and the party of the second part accepts the same and has it recorded, such transactions make the instrument a contract between the parties.

INJUNCTION.—*Natural Gas.—Interference With Contractual Rights.— Gas Well.—Contract.—Trespass.—Damages.*—A., the owner of a certain eighty-acre tract of land, entered into a contract with B., whereby B. was granted the right to bore a gas well on a certain part thereof, 20 x 20 feet square, it being stipulated in the contract, on the part of A., that no other well should be driven on any other part of the eighty-acre tract, except that A. may bore a well for his own use and that of his neighbors. B.'s right to continue in the possession and use of the tract, 20 x 20 feet, was upon certain conditions, and other rights were respectively granted by the one to the other. C., a stranger to the contract, without any right to do so, had erected a derrick on the eighty-acre tract other than the 20 x 20 feet square, and was threatening to bore a gas well. B. brought suit to enjoin C. from boring the well.

*Held*, that injunction was the proper remedy, as an action for damages would not have been adequate; for the damage of C.'s well, if

The Indianapolis Natural Gas Company *v.* Kibbey, Trustee.

bored, to B.'s, as affecting the flowage of gas, could not be measured.

From the Madison Circuit Court.

*T. J. Kane* and *T. P. Davis*, for appellant.

*J. F. Kibbey*, for appellee.

HOWARD, J.—This was a suit brought by the appellee for injunction. A demurrer to the complaint was overruled; and the appellant declining to plead further, judgment was rendered in favor of the appellee, enjoining the appellant from drilling a gas well in the premises described in the complaint.

The appellee, as assignee, claimed title to the gas lands in question, under the following contract:

"This agreement, made and entered into this 26th day of September, 1889, by and between Mary E. Neece and W. S. Neece, of the first part, and O. F. Deal, of the second part, witnesseth: That the parties of the first part have this day granted and contracted to the second party, his heirs or assigns, one tract of land, twenty feet square, of the following real estate (describing it), containing eighty acres, more or less, * * * for the purpose and exclusive right of a gas well on said twenty-foot square tract.

"Said second party, his heirs or assigns, shall have the right of ingress and egress to and from the twenty-foot square tract of land, over said entire tract, for the purpose of drilling, utilizing and operating said gas well, and piping and conducting gas therefrom, including the erecting of suitable sheds over said well, and the right to erect and remove any and all machinery and fixtures necessary to the drilling, repairing and operating said well, and the right to put down water wells and use sufficient water for said purposes. Said second party, his heirs and assigns, shall also have the right to the use of

The Indianapolis Natural Gas Company *v.* Kibbey, Trustee.

the highways adjoining any part of said entire premises for the laying of mains for the transportation of gas and oil.

"All pipes that are placed on said premises, in reaching said highways, shall be of sufficient depth not to interfere with the cultivation of the soil, when it can be so done. Said second party agrees to pay to said first party all damages that may accrue to them in the way of injury to buildings, fences, or crops, occasioned by work under this contract.

"In consideration of said contract and other conditions, said second party agrees to deliver to said first party, his heirs or assigns, natural gas, free of charge, necessary for domestic use for dwelling houses and farm use on said premises, on or before the first day of February, 1890, in a gas main along the public highway in front of said buildings.

"And, as an additional consideration, the second party agrees to pay to said first party an annual rental of fifty dollars each year for each gas well drilled as aforesaid, which produces gas in paying quantities, sufficient for manufacturing purposes. Said payments shall commence after the completion of each gas well, and continue, annually, during the continuance of this contract, and shall be placed at the C. Quick & Co. bank, of Frankton, Indiana.

"This contract shall be deemed to commence at, and run from, the date of the signing thereof, and shall be deemed to have terminated whenever natural gas ceases to be used generally for manufacturing purposes, or whenever the second party, his heirs or assigns, shall fail to pay or tender the rental price herein agreed upon within sixty days of the date of its becoming due. And, in the event of the termination thereof for any cause, all

rights and liabilities hereunder shall cease and termi-
nate.

"Now, as a part of said contract, and in further con-
sideration thereof, the parties of the first part covenant
and agree, and hereby bind themselves, their heirs, ex-
ecutors, and assigns, not to drill, or suffer or permit others
to drill or put down any other gas well or wells on any part
of said entire eighty-acre tract of land described above,
during the continuance of said contract, except as pro-
vided below.

"It is further agreed that all gas secured from the
wells mentioned above shall be used at Frankton, Mad-
ison county, or in the vicinity; and in case the second
party, his heirs or assigns, shall pipe, or cause to be
piped, of the gas secured as above, from Frankton and
vicinity, then this agreement shall cease and terminate.

"It is further agreed that whenever the first party de-
sires to bore a gas well on said premises, not included in
said twenty-foot tract, for residence purposes for himself
or his neighbors, he can do so.

"This contract shall extend to and be binding upon
the heirs, executors and assigns of the parties hereto."

The contract was signed and acknowledged by Mary
E. Neece and William S. Neece, the parties of the first
part, and was duly recorded in the recorder's office of
Madison county; but it was not signed by Otis F. Deal,
the party of the second part.

Otis F. Deal dying, the contract was, by order of court,
assigned to the appellee as trustee for parties named in
the complaint.

Appellant's first contention is that this contract has
never been in force, for the reason that it was not signed
by the party of the second part.   This question has been
expressly decided against the position assumed by coun-
sel.   The signing and acknowledgment of the instru-

ment by the party of the first part, and the acceptance and recording thereof by the party of the second part, make it a contract between the parties. *Midland R. W. Co.* v. *Fisher*, 125 Ind. 19; *Harlan* v. *Logansport Natural Gas Co.*, 133 Ind. 323, 32 N. E. Rep. 930.

Counsel next enter upon an extended examination of the contract, as to whether it is executed or executory, as to whether it is a lease or a license, as to whether the promises made therein. by the party of the second part are a sufficient consideration on their part, and as to whether the contract is a fair one between the parties and one which ought to be upheld. These might be proper questions for consideration in a suit between the parties to the contract and upon the contract itself, to enforce its provisions, to declare a forfeiture, or for damages under it. But, so far as appears from the complaint, the appellant is a stranger to the contract, and appears merely as a trespasser upon whatever rights the appellee may have to the land in question.

The complaint and contract show that the appellee has the exclusive right to put down gas wells on twenty feet square of ground, in the northeast corner of an eighty acre tract; and also that, seemingly to protect the flowage to such wells, and give a "field" or territory from which gas or oil may be drawn, the parties of the first part further agree and "bind themselves, their heirs, executors and assigns, not to drill, or suffer others to drill or put down any other gas well, or wells, on any part of said entire eighty acre tract of land," except that the parties of the first part may sink a well for their own private use, or the use of their neighbors, for domestic purposes.

Whatever name may be given to the rights of the appellee in the eighty acre tract, outside the twenty-foot square, it is clear that those rights include the title to

the flowage of whatever gas may underlie the whole tract, save only the right to the owner to sink a well for domestic uses.

Appellant can, therefore, have no claim or right from any source to sink a well upon any part of said land. Moreover, even if the owner of the fee could give appellant any right, by way of assignment or otherwise, as against the right of appellee, expressly given under the contract, the complaint shows no such right given.

The complaint shows the appellant to be simply a stranger, who has entered upon said land and "engaged in the erection of a derrick thereon, and threatens, and intends without the consent of the plaintiff and unlawfully, to bore a well on said land for gas, and threatens to convey from said premises the gas flowing from such well by pipes." And, further, "that if said defendant is permitted to do this, it will greatly lessen the flow of natural gas from any well that said plaintiff may cause to be bored on said land, whereby irreparable damage will be caused," etc.

We think that an injunction was the proper remedy. An action for damages would have been inadequate, since the damages could not be measured.

By the terms of the contract, appellee had a right to all the gas under the eighty acre tract that could be obtained by boring within the twenty-foot square, save that which might be obtained from one well for the domestic use of the owner and his neighbors.

From the nature of the product, it is evident, that one flowing well would withdraw the gas from a considerable territory, and that other wells could not be sunk within such territory without diminishing the flow to the first well. How much the flow of appellee's well would be diminished, however, could not be determined; the damages could not be measured in money. Neither would

ejectment lie as to that part of the eighty acre tract outside the bounds of the twenty-foot square; for as to that part of the land, appellee has only the right to the gas under the surface which may be drawn to the wells sunk within the square. *Funk* v. *Haldeman*, 53 Pa. St. 229; *Allison & Evans' Appeal*, 77 Pa. St., 221; 1 High Injunctions, section 697.

Whatever might be the rights of the grantors in the contract set out in the complaint, it is clear that appellant had no right to do the acts complained of, and that the appellee was entitled to the injunction granted.

The judgment is affirmed.

Filed Nov. 24, 1893.