## American Steel & Wire Company *v.* Tate.

[No. 4,841. Filed May 31, 1904. - Rehearing denied October 11, 1904.]

Injunction.—*Gas and Oil Lease.*—*Acts of Third Persons.*—One entitled to the exclusive right of gas and oil products on a tract of land under an unexpired lease from the owner of the land may enjoin the invasion thereof by a stranger, and the threatened drilling of a well by him, for the purpose of extracting gas or oil, the damages that would accrue being incapable of definite ascertainment.

From Madison Circuit Court; *John F. McClure,* Judge.

Suit by the American Steel & Wire Company against Joseph Tate. From a judgment sustaining demurrer to complaint, plaintiff appeals. *Reversed.*

*W. A. Kittinger* and *W. S. Diven,* for appellant.
*A. H. Jones,* for appellee.

Black, C. J.—A demurrer for want of sufficient facts to the appellant's complaint was sustained. The appellant sought an injunction against the appellee to prevent him from drilling wells upon certain land in Madison county,

or interfering with the rights claimed by the appellant under a written contract between Mary J. Baxter, the owner of the land, and Clayton H. Garvey, who had, in writing, assigned the contract to the American Wire Nail Company, by which it was assigned in writing to the appellant. By the terms of the contract, executed April 2, 1897, the landowner, in consideration of $1, "granted and contracted" to Garvey, his successors and assigns, three parcels of land, each 50 by 200 feet square, of a tract of 108 acres, the situation of the three parcels being particularly described, "for the purpose and with the exclusive right of gas or oil-well and products therefrom on the entire tract," and of egress and ingress over the entire tract, for drilling, utilizing, and operating the wells and piping and conducting gas and oil therefrom, and the right to erect, maintain, and remove any and all machinery or fixtures necessary to the drilling, repairing, utilizing, and operating of the wells and the protection thereof, and the right to put down water wells on the premises and to use water therefrom for such purposes, and the right to the use of the highways adjoining and part of the premises for pipes for the transportation of gas or oil, and for the purpose of erecting, maintaining, and using telephone and electric lines; all pipes on the premises to be at sufficient depth not to interfere with the cultivation of the soil. "In consideration of said contract" Garvey agreed to furnish to the landowner, "when a gas-well is drilled, and thereafter so long as said gas-well shall produce natural gas in sufficient quantities, natural gas, free of charge, necessary for domestic use," etc. Garvey further agreed to pay the landowner the full one-eighth of all petroleum saved by him on the premises, and to deliver the same free of expense in tanks or pipe-lines, etc., and to pay the landowner "an annual rental of $50 each year for each of the" three parcels of land, "until a gas-well or wells have been drilled by" Garvey, "after which" Garvey "is to pay" the landowner "for

each gas-well so drilled and from which gas or oil is used by" Garvey "for mercantile purposes the additional sum of $50 per year from the date of drilling of such well or wells." All payments were to be made at the office of Garvey in Anderson, Indiana.

The landowner agreed and bound herself, her heirs and assigns, not to lease any of the tract of 108 acres to any other party or parties for gas or oil privileges "during the life of the within lease." It was agreed that the contract should commence at and run from the date of signing thereof, and terminate and be at an end whenever, in the estimation of Garvey, there can not be produced from the land enough natural gas or oil to use the same profitably for mercantile purposes; that the landowner may treat the lease or contract as of no force or effect upon the failure of Garvey or assigns to pay or tender the rental price therein agreed upon within sixty days of its becoming due at the place of payment named therein; that the contract may be terminated by Garvey or assigns at any time by the payment or tender of $5, with a written release of the lease duly executed and acknowledged, which the landowner bound herself to accept. It was agreed that in the event of the termination of the contract for any of the causes above mentioned, or in any of the ways mentioned in the contract, all rights except those thereinafter reserved, and liabilities in the contract, "shall be canceled and ended, and no right of action herein will lie," but that the surrender and cancelation of the contract or termination thereof in any of the ways above mentioned shall not operate to cancel the right given to Garvey to continue the use and maintenance of his pipe-line or lines of telephone and electric lines through, upon, and across the tract of land or along the highways adjoining the land, and that at any time after the termination of the lease or contract, as before provided for, Garvey or assigns, at their option are to have the privilege of entering upon the land and remov-

-ing therefrom any part or all of the property, including gas or oil-well casings, tubings, etc. It was provided that the contract shall extend to and be binding upon the heirs, executors, and assigns of the parties thereto.

It was shown in the complaint, amongst other things, that the contract was duly signed, acknowledged, and recorded, and that Mary J. Baxter was still the owner of the land; and the assignments of the contract above mentioned were stated. It was alleged that at the execution of the contract Garvey paid the landowner the rental for one year, and thereafter the American Wire Nail Company and the appellant each year paid her, as the same became due, promptly, the amount of rental due her, each year in advance, and she received the same, at the place of payment designated in the contract, until the year 1901; that when the rent became due May 2, 1901, the appellant had the money at that place ready to pay her for the rent, and she was notified that the money was there for her, but she did not call for it, and it still remained there for her; that within sixty days from the time when the rent should be paid the appellant tendered to her in person the full amount of the rent provided for in the contract in cash and in legal tender currency of the United States, and the appellant still had that money, and was able, willing, and ready to pay it to her whenever she would receive it. It was alleged that by virtue of the contract the appellant had the sole right, and was the owner of the exclusive right, to drill upon the real estate for gas and oil; that the appellee, within the then last ten days, wrongfully and without the consent of the appellant, had entered upon the real estate, and had taken thereupon his derricks and machinery for drilling, for the purpose of drilling a gas and oil-well on the real estate, and was proceeding and at work in drilling a gas and oil-well for himself thereon, in defiance of the appellant's right and denying its right; that if he were permitted to drill the well it would take the gas and oil, and

thereby greatly and permanently injure the appellant therein, and would take the property of the appellant, etc.

The expressed purpose of the contract was to confer upon the grantee the exclusive right of gas or oil-well and products therefrom on the entire tract of 108 acres, and the landowner bound herself, heirs, and assigns, not to lease any of that tract to any other party or parties for gas and oil privileges during the life of the contract. The invasion of the tract by a stranger, and the threatened drilling of a well by him for the purpose of extracting gas or oil, without the consent of the appellant, the damages that would accrue being incapable of definite ascertainment, constituted ground for an injunction, whether the appellant had or had not entered upon the land and proceeded to drill a well or take gas or oil therefrom (as to which the complaint contains no allegation), if the appellant had not lost its rights under the contract. *Indianapolis Nat. Gas Co.* v. *Kibbey,* 135 Ind. 357.

The contract was executed April 2, 1897, and the rent for the first year was then paid. The rent was to be paid each year in advance. It was due, therefore, April 2, 1901. By the terms of the contract the landowner might treat it as of no force or effect upon the failure of the appellant to pay or tender the rent within sixty days of its becoming due at the place of payment designated. On May 2, 1901, the appellant had the money there ready to pay, and the landowner was notified thereof, and within the sixty days specified in the contract the appellant tendered the money to her. The complaint herein was filed May 17, 1901, within sixty days from the time for the payment of rent in advance, and the appellee had then been proceeding to drill a well within the then last ten days, and therefore before the expiration of the period of sixty days designated in the contract.

It appears from the complaint that the appellant had acquired from the landowner a valuable interest in the

land, and the facts alleged in the complaint do not show the termination of that interest in any method indicated by the contract with the landowner or otherwise. It is alleged that the appellee, not a party to the contract, wrongfully and without the consent of the appellant, had entered upon the land, and was proceeding to deprive the appellant of its right under the contract with the landowner by taking oil and gas to the great and permanent injury of the real estate and the appellant's interest therein. The complaint was sufficient to put the appellee to his answer.

Judgment reversed, with instruction to overrule the demurrer to the complaint.