CAMPBELL v. ROCK OIL CO. et al.

(Circuit Court of Appeals, Seventh Circuit. January 2, 1907.)

No. 1,298.

1. MINES AND MINERALS—OIL AND GAS LEASES—RIGHT OF LESSOR TO TERMINATE.

In a suit by a lessor to terminate the lessee's privilege of exploration under an oil and gas lease, which under the law of Indiana could be terminated at the end of any year, and prior to the finding of oil or gas in paying quantities, only by the giving of notice a reasonable time before the expiration of such year, the burden rests upon the complainant to prove that the time between the giving of the notice and the expiration of the year was a reasonable time within which to ascertain whether oil or gas in paying quantities could be found.

2. SAME—ESTOPPEL.

Where the notice given by a lessor in an oil and gas lease of an intention to terminate the lessee's privilege of exploration thereunder at the end of a year, because of delay in operating, required the lessee to "proceed with all reasonable speed and promptness," under penalty of a forfeiture of all of its rights, and at the end of the year the lessee was so proceeding and had completed a well, but, owing to an inflow of salt water, it became necessary to incur large expense for machinery and pumping to render the well productive, which expenditure was made with the knowledge of the lessor, she was estopped to thereafter claim that the lease was terminated by the notice.

Appeal from the Circuit Court of the United States for the District of Indiana.

The court on final hearing sustained the master's report; and appellant's bill for the annulment of a gas and oil lease was dismissed for want of equity.

The lease is as follows:

"This agreement made and entered into this 20th day of May, A. D. 1897, by and between Julia E. Campbell and Chas. J. Campbell, of the County of Cook, and State of Illinois, of the first part, and Rock Oil Co. of the second part, witnesseth:

"That the said parties of the first part, for and in consideration of the agreements hereinafter mentioned, have granted, demised and let unto the party of the second part for the purpose and with the exclusive right of drilling and operating for petroleum and gas, all that certain tract of land situated in

township, Liberty, county, Delaware, and state of Indiana, bounded and described as follows to-wit:

"Being in section number 35, township number 21, range number 11 East, bounded north by lands of Margaret J. Murray, and Jno. Shrayer, east by lands of Mary R. Sparks, south by lands of W. C. Swanders and H. B. Swanders, west by lands of Geo. T. Orr, containing 120 acres, be the same more or less, together with the right of way over said premises to the places of operating, the right to lay pipes to convey water, oil and gas, and the right to remove any machinery or fixtures placed on said premises by the party of the second part.

"The party of the second part is to have and to hold the said premises for and during the term of five years from the date hereof, and as much longer as oil or gas are found in paying quantities or the rental paid thereon.

"The said first parties shall fully use and enjoy said premises for farming purposes, except such parts as may be necessary for said operations.

"In consideration of said grant and demise, the said party of the second part agrees to give or pay to the said parties of the first part, the full equal 1-6 part of all the oil produced or saved from the premises, and to deliver the same, free of expense, into tanks or pipe lines to the credit of the first parties.

"If gas only is found the party of the second part agrees to pay to the parties of the first part fifty ($50) dollars per year for the product of each well while the same is used off the premises.

"It is agreed that the first parties may have gas free of cost for household use on the premises so long as this lease is in force; and there shall be no wells drilled within 300 feet of the buildings now on the premises, without consent of the first parties.

"It is further agreed, that the party of the second part shall complete a well on the described premises, within one year from the date above, or in default thereof pay to the parties of the first part for such delay a yearly rental of $60.00 on the said premises from the time of completing such well, as above specified, until such well shall be completed. The said yearly rental shall be deposited to the credit of the parties of the first part in the Citizens' Bank, Muncie, Indiana, or be paid direct to first parties. And a failure to complete such well, or to pay said rental shall render this lease null and void. The party of the second part agrees to drill an oil or gas well within one year from the above date or forfeit to the parties of the first part fifty ($50) dollars. The party of the second part agrees to pay rental on all lands at rate of 50 cents per acre, as above described, excepting forty (40) acres for each well drilled, or abandon same.

"Party of the second part agrees to pay a reasonable damage done fences, growing crops, and timber, while operating.

"All rentals shall be paid annually on or before July 1st.

"It is understood between the parties of this agreement, that all the conditions between the parties hereunto shall extend to their heirs, executors and assigns."

No well was drilled prior to 1904; but the stipulated rental was paid each year, including a payment before July 1, 1903, for the year ending May 20, 1904.

On March 26, 1904, appellant served upon appellees the following notice:

"You are hereby notified that the lease for gas and oil made by the undersigned to the Rock Oil Company, bearing date May 20th, 1897, on the following described real estate in Delaware county, state of Indiana, to wit: The west one half (½) of the south-west one quarter (¼) of section 35, township 21, range 11, east, and west one half (½) of east one half (½) of southwest one quarter (¼) of section 35, township 21, range 11 east, containing 120 acres, will not be extended beyond the period for which extension has been made and assented to, to wit: May 20th, 1904; or delay in operations on said premises be delayed beyond such period; nor will a money consideration be received and accepted for further extension or delay in operation thereon.

"You are hereby notified and required to proceed with all reasonable promptness and dispatch to operate for oil and gas on said premises under penalty of forfeiture of all rights and privileges under said instrument of lease."

After the middle of April, 1904, appellees began to drill.' They went to a depth of 1,240 feet. Oil-bearing rock was found at 955 feet. It was penetrated 285 feet. This was a proper depth for finding oil in that territory. On May 18th the well was completed and was shot. It was cleaned out on the 19th, and the pumps were started. Only water came. On the 20th and for some days thereafter small quantities of oil were obtained, when suddenly large volumes of salt water prevented the well from producing oil. The pumps were kept working day and night "until some time after the commencement of this suit," on June 10th. During this time appellees in good faith tried to produce oil, and they operated skillfully in an endeavor to ascertain whether the well could be made a paying one or not.

A well in that territory at that time could be drilled, shot, and equipped for pumping in from 15 to 25 days; and contractors, whose terms were reasonable, were available to appellees.

In their operations on appellant's land appellees expended $1,677 before May 20th; and after that date, $3,704, of which the sum of $1,551 was for machinery, which they subsequently removed.

Appellant had full knowledge of appellees' operations, both before and after May 20th, and made no objection whatever prior to beginning this suit.

C. C. Shirley, for appellant.

Abram Simmons and Roscoe C. Griffith, for appellee.

Before BAKER and SEAMAN, Circuit Judges.

BAKER, Circuit Judge, after stating the facts, delivered the opinion of the court.

Appellant's assertion that prior to her execution of this oil lease in 1897 the Indiana decisions had settled upon a construction of such contracts whereby the lessor at the end of the original or any renewal period could terminate the lessee's interest without notice is not warranted by the cases. Diamond Plate Glass Co. v. Curless, 22 Ind. App. 346, 52 N. E. 782, and Same v. Echelbarger, 24 Ind. App. 124, 55 N. E. 233, were decided by the Appellate Court in 1899 and 1900, and were expressly disapproved by the Supreme Court in Hancock v. Diamond Plate Glass Co., 162 Ind. 146, 70 N. E. 149, decided in 1904. Knight v. Coal Co., 47 Ind. 105, 17 Am. Rep. 692, decided in 1873, was a case of an estate at will in realty, and its inapplicability to a contract right to explore for oil and gas, substances which, owing to their fugitive nature, are not subject to ownership until reduced to possession, was pointed out in New American Oil Co. v. Troyer (Ind. Sup.) 77 N. E. 739, decided in 1906.

Under the Indiana law appellant had the right to terminate appellees' privilege of exploration by giving them notice for a reasonable time prior to May 20, 1904, that no further extension would be granted. And appellees could have held over only by finding gas or oil in paying quantities within such reasonable period. Consumers' Gas Trust Co. v. Littler, 162 Ind. 320, 70 N. E. 363; Same v. Worth, 163 Ind. 141, 71 N. E. 489; Same v. Ink, 163 Ind. 174, 71 N. E. 477; Same v. Crystal Co., 163 Ind. 190, 70 N. E. 366; Lafayette Gas Co. v. Kelsey, 164 Ind. 563, 74 N. E. 7; Manhattan Oil Co. v. Carrell, 164 Ind. 526, 73 N. E. 1084; New American Oil Co. v. Troyer (Ind. Sup.) 76 N. E. 253.

But the Circuit Court ruled correctly, we believe, that the rights of appellees were not terminated by the notice of March 26th, for two reasons.

1. Appellant had the burden of proving that from March 26th to May 20th was a reasonable time within which to ascertain whether oil or gas in paying quantities could be found. The evidence has not been brought before us. That the time was reasonable the master has not found as a fact; nor is it the inevitable inference from the evidentiary facts in the report. True, the report states that a well could be drilled, shot, and equipped for pumping in from 15 to 25 days. But the likelihood of encountering large volumes of salt water is not negatived, nor the fact that the water might be pumped off and a paying well produced. And the reasonable time for such operations is not disclosed affirmatively. If it were necessary to draw an inference, the facts in relation to appellees' operations, namely, that they worked diligently and skillfully from April 16th until after June 10th without being able to ascertain whether oil or gas could be found in paying quantities, might warrant a finding that a period of 55 days was not reasonable.

2. The notice itself is confused and ambiguous. The lease "will not be extended beyond May 20th; or delay in operations on said premises be delayed beyond such period; nor will a money consideration be accepted for further extension or delay in operations." Did appellant mean that for a period beyond May 20th money would be refused, but that diligent operations for the discovery of oil or gas would be accepted until the question of the profitableness of the enterprise could be determined? It is immaterial whether such in fact was her meaning. Immaterial also whether that interpretation was a fair one to put upon the notice. For appellant knew from appellees' actions that such was their construction of the notice, and she approved of that construction while they expended $3,704 after May 20th, of which $2,203 would be a loss unless they had the right to continue their operations to success.

The decree is affirmed.