## CAMPBELL v. SMITH ET AL.

[No. 21,993.  Filed March 13, 1913.  Rehearing denied June
27, 1913.]

1.  APPEAL.—*Demurrer to Complaint.*—*Findings and Conclusions
of Law.*—Where the special findings of fact closely follow the
allegations of the complaint, a determination of the exceptions to
the conclusions of law necessarily determines the sufficiency of
the complaint as against a demurrer for want of facts.  p. 161.
2.  MINES AND MINERALS.—*Oil and Gas.*—*Trespass.*—*Relief.*—
While the lessee under an oil and gas lease may enjoin the re-
moval of oil by the lessor and his subsequent lessees, where the
rights of the prior lessee are being litigated by the lessor, and the
removal of the oil occurs while such litigation is pending, such
prior lessee is not required to resort to injunctive relief, but may
bring his action for damages after the termination of the liti-
gation.  p. 168.
3.  APPEAL.—*Review.*—*Findings and Conclusions of Law.*—*Infer-
ences.*—The court on appeal cannot add to or take from findings
or conclusions by inference.  p. 171.
4.  MINES AND MINERALS.—*Oil and Gas.*—*Trespass.*—*Wilful
Injury.*—Where an owner of land gave notice to terminate an oil
and gas lease, and thereafter while a suit by him to cancel
the lease was pending, made leases to other parties who, without
objection from the original lessee removed oil from the land,
neither the owner nor the subsequent lessees were wilful wrong-
doers, although such suit to cancel the lease was subsequently
determined against such landowner.  pp. 171, 172, 173.
5.  MINES AND MINERALS.—*Oil and Gas.*—*Trespass.*—*Wilful
Injury.*—*Damages.*—Where a trespass has been wilfully or negli-
gently committed in the wrongful taking of oil or gas from the
soil, the wrongdoer is liable for the value of the oil or gas so
taken without any deduction for the cost of taking it out; but
if the taking was under circumstances showing that there was
no intent to do wrong, the measure of liability is the value of
the oil or gas taken less the cost of extracting it.  pp. 171, 173.
6.  MINES AND MINERALS.—*Oil and Gas.*—*Rights of Lessees.*—The
lessee under an oil and gas lease is not the owner of the oil or
gas while the same is in the earth, but only has the exclusive
right to mine therefor.  p. 176.
7.  MINES AND MINERALS.—*Oil and Gas.*—*Trespass.*—*Damage to
Leasehold.*—Where the lessor in an oil and gas lease executed
subsequent leases covering the oil and gas in the same land, the
finding of the trial court of the value of the prior lessee's lease-

hold both before and after the subsequent lessees had extracted and removed oil from the premises, and a judgment on such finding in favor of such prior lessee for the difference, cannot be sustained, since there is no basis for knowing what amount of oil would or could have been produced had the subsequent lessees not operated, and the damages are wholly speculative. p. 177.

From Delaware Circuit Court; *J. G. Leffler*, Judge.

Action by John W. Smith and others against Julia E. Campbell and others. From a judgment for the plaintiffs, the defendant, Julia E. Campbell, appeals. (Transferred from the Appellate Court under §1405 Burns 1908, Acts 1901 p. 590.) *Reversed.*

*Myron H. Gray* and *Jesse R. Long,* for appellant.

*Griffith & Ross, Abram Simmons* and *Frank C. Dailey,* for appellees.

MYERS, C. J.—Appellant was on May 20, 1897, the owner in fee simple of 120 acres of land in Delaware County, Indiana. On that date, she and her husband executed a lease on the real estate to the Rock Oil Company "for the purpose and with the exclusive right of drilling and operating for gas and petroleum". The lease among other things provided that "the party of the second part is to have and to hold the said premises for and during the term of five years from the date hereof, and as much longer as oil or gas are found in paying quantities, or the rental paid thereon." It was further provided that the Rock Oil Company "shall complete a well on the above described premises within one year from the date above, or in default thereof, pay to the parties of the first part for such delay, a yearly rental of $60 on the said premises from the time for completing such well as above specified, until such well shall be completed," and the Rock Oil Company "agree to drill an oil or gas well within one year from the above date, or forfeit to the parties of the first part Fifty Dollars." The lease also provided for furnishing gas free of cost for household use on

the premises, so long as the lease is in force.   The lease was recorded in Delaware County, June 4, 1897.

This action was instituted by the Rock Oil Company and certain individuals who had by assignment acquired a half interest in the first lease, to recover alleged damages for the invasion of their alleged exclusive right of a grant to enter and possess the oil in the leased field. The defendants were Mrs. Campbell, the Lily Oil Company, and the Indiana Pipe Line Company.   There was judgment against the two former and ancillary proceedings in attachment were sustained.   This appeal is by Mrs. Campbell alone.

The complaint is in two paragraphs, one counting upon an alleged invasion of appellee's common-law rights, without counting on the contract, and the second paragraph counting upon the written contract.   The sufficiency of each paragraph was unsuccessfully challenged by demurrers for want of facts to constitute causes of action, and error is here predicated on those rulings.   The facts, upon proper request, were found specially by the court, and con-

1. clusions of law stated, but as the findings closely follow the allegations of the complaint, and the determination of the question as to the findings and conclusions necessarily determine the sufficiency of the complaint, it will not be necessary to consider the complaint. *Marion State Bank* v. *Gossett* (1911), 175 Ind. 211, 213, 93 N. E. 996; *Goodwine* v. *Cadwallader* (1902), 158 Ind. 202, 61 N. E. 939.

The material findings are, the execution and recording of the lease; that payments were made as rentals under the lease in the sum of $60 per annum annually up to and including April 13, 1903, and a payment of $50, June 17, 1898, by way of forfeiture under the terms of the lease; that on March 26, 1904, appellant served a written notice on the Rock Oil Company to the effect "that the lease for gas, and oil, made by the undersigned to the Rock Oil Company bearing

date May 20, 1897 on [the described property] will not be extended beyond the period for which extension has been made, and assented to, to wit: May 20, 1904, or delay in operation on said premises be delayed beyond such period; nor will a money consideration be received and accepted for further extension or delay in operation thereon. You are hereby notified and required, to proceed with all reasonable promptness and dispatch to operate for oil and gas on said premises, under penalty of forfeiture of all rights and privileges under said instrument of lease."

No well was drilled for oil or gas by the Rock Oil Company or anyone else, until the middle or latter part of April, 1904, at which time, the plaintiffs caused a derrick and drilling machinery to be placed on said real estate, and proceeded to drill a well which was shot with nitroglycerine on May 18, 1904; and no pipes or pipe lines were placed on said real estate, and no oil or gas was produced or saved therefrom prior to May 18, 1904; that gas for household purposes was never delivered to Julia E. Campbell or her tenant or tenants on said real estate, and no request was made therefor other than that contained in the notice of March 26, 1904; that no gas was produced from said well which was shot on May 18, 1904, and the only oil produced therefrom was run into the lines of The Indiana Pipe Line Company, as follows: On June 24, 1904, 158.89 barrels; on August 6, 1904, 167.37 barrels; on May 19, 1904, the well was cleaned out and tubed, and a small quantity of oil pumped from it on May 20, 1904; on May 19, 1904, the well produced only water when pumped, and thereafter when it produced oil it produced it in small quantities and suddenly stopped and produced large quantities of salt water, with the result that the salt water smothered the oil, and prevented the well from producing the oil; that immediately after the well was completed, shot and started to pumping, the plaintiffs provided at said well sufficient machinery of proper character for pumping and operating the well, and erected tanks for

the reception of oil from the well before the well was completed; after it had started to pump the well it was continuously pumped night and day, until some time during the month of August, 1904, and that during all the time plaintiffs made a good-faith effort to procure oil from the well, and operated the same in a skilful manner to endeavor either to make the same a paying well, or ascertain whether the well was a paying well, or not a paying well. That the well so drilled was drilled to a depth of 1240.5 feet and said depth was a proper depth for finding oil in the deep pay, in that territory, as shown by the successful deep pay wells theretofore and thereafter drilled in that territory. That the plaintiffs paid out and expended in and about the work of drilling and completing the well on and before May 20, 1904, the sum of $1,677.25, and after May 20, 1904, they expended for machinery and other equipment for operating the well, and completing the same, and in operating the same, $3,704.89; but, of the machinery so purchased, they removed from the premises, after the same had been placed on said premises, machinery of the value of $1,551.22; the amount expended by the plaintiffs in drilling the well and equipping the same for operation and in operating the same was the sum of $3,830.92. While the plaintiffs were drilling the well, defendants had full knowledge that plaintiffs were drilling said well and expending money therefor, and made no objection to the drilling of said well by the plaintiffs, and had knowledge that the plaintiffs were running and operating said well after it was so completed, for the purpose of procuring oil, and made no objection to plaintiffs' operating said well, and made no objection prior to June 10, 1904, when appellant filed her complaint in the Circuit Court of the United States for the District of Indiana, against the plaintiffs, to cancel said lease, to quiet title against the plaintiffs who were claiming an interest by virtue of said lease and the improvements thereon. That the suit so filed by appellant was tried and determined, and

a judgment rendered in favor of the plaintiffs in this action, dismissing the bill of complaint so filed by appellant and rendering judgment against her for costs. Appellant appealed from the judgment which was affirmed by the Circuit Court of Appeals for the Seventh Circuit, January 2, 1907. *Campbell* v. *Rock Oil Co.* (1907), 151 Fed. 191, 80 C. C. A. 467. Pending the litigation in the United States Courts, appellant on November 7, 1904, her husband joining her, executed an oil and gas lease on the same land, to the defendant Lily Oil Company, a corporation, and on the same day the latter company entered upon the real estate, and drilled two oil wells thereon from which it produced between December 30, 1904, and December 9, 1905, 7338.09 barrels of oil; that the oil was run by the Lily Oil Company into the lines of the defendant, The Indiana Pipe Line Company, and on January 22, 1906, the Lily Oil Company sold 6115.08 barrels of said oil and appellant sold 1223.01 barrels of said oil. That the value of the oil produced and sold was $5,442.42 less storage charges in the sum of $396.76, leaving a net amount which the Lily Oil Company received of $5,045.66; that the appellant received for the oil sold by her $1,088.47, less storage charges of $79.35, leaving a net balance which appellant received from the sale of said oil of $1,009.12. That on May 30, 1907, 84.78 barrels of oil, produced from the two wells prior to January 22, 1906, by the Lily Oil Company, was run into the lines of The Indiana Pipe Line Company, 70.65 barrels of which was placed to the credit of the Lily Oil Company, and 14.13 barrels to the credit of appellant, all of which yet remains in the care and custody of The Indiana Pipe Line Company. That the fair market value of all of said oil was 89 cents per barrel. That the defendant, The Indiana Pipe Line Company, is and was a corporation organized under the laws of Indiana, at the time it received and transported the oil through its pipe lines, and the Lily Oil Company, and appellant signed and executed and filed with The Indiana Pipe

Line Company on January 16, 1906, in its office at Lima, Ohio, a written division order, for the sale of the oil so sold by the Lily Oil Company and appellant. That the oil when so sold was transferred to the purchaser by The Indiana Pipe Line Company, on the written orders of the Lily Oil Company and appellant filed in the office of The Indiana Pipe Line Company. That at the time the oil was sold by the Lily Oil Company and appellant, and was transferred by them upon their written order by The Indiana Pipe Line Company, the latter had full knowledge of the pendency of the suit in the United States Circuit Court for the District of Indiana, and had been notified before the sale that plaintiffs claimed the oil and that The Indiana Pipe Line Company should hold the oil until after the suit was determined in said court.

That the plaintiffs operated the well drilled by them, and which was shot on May 18, 1904, in such manner as to them seemed best for a number of months after the same was shot, and the defendants at no time molested or interfered with them in the operation of the well. That plaintiffs were never at any time notified or warned by defendants, or either of them, to quit said premises, stay off the same, or cease operations, except such as was given by the notice of March 26, 1904, and by the suit commenced on June 10, 1904, and that the plaintiffs never enjoined or restrained the defendants or any of them from carrying on operations on said premises, or any part thereof. That the fair and reasonable cost of mining the oil from the premises so mined by the Lily Oil Company, including the reasonable value of drilling wells and equipping the same for operation, and the operations carried on in producing and marketing the oil, and the actual cost to the defendant Lily Oil Company in drilling the two wells, equipping the same, producing and marketing the oil was $8220.92. That when it entered upon the real estate and constructed the oil and gas wells thereon, and mined and produced the oil there-

from, the Lily Oil Company did so without right, and its actions and conduct in so doing were wrongful and unlawful, and were a trespass against the rights of the plaintiffs herein. That at the time appellant executed the oil and gas lease to the Lily Oil Company under which it drilled the two wells and produced the oil, she did so without right and the same was unlawful and wrongful, and she had no right or authority at the time to execute the lease. That the mining, producing and selling of said oil on the part of the Lily Oil Company and appellant were unlawful and wrongful, and they had no right so to do, and The Indiana Pipe Line Company had no right to allow the oil to be shipped through its lines, or to appropriate the oil in any way, and that in so doing a trespass was committed against the plaintiffs herein. That the fair market value of the leasehold estate so owned by the plaintiffs before the Lily Oil Company wrongfully and unlawfully took possession of the same and constructed the two oil wells, and before the oil was so wrongfully and unlawfully produced and taken from the leasehold premises by the Lily Oil Company, appellant, and The Indiana Pipe Line Company, was $4,800, and the fair market value of said leasehold estate thereafter was $360, and that the plaintiffs were damaged by said unlawful and wrongful acts of the defendant in the sum of $4,440.

As conclusions of law it was stated that plaintiffs should recover $4,440 of appellant and the Lily Oil Company, and that the attachment be sustained against them as nonresidents, and that there be no recovery against The Indiana Pipe Line Company; and that it recover costs, and that plaintiffs recover costs against appellant, Campbell, and the Lily Oil Company, and over motion for a *venire de novo* and for a new trial judgment was entered accordingly.

Upon this state of the record three questions are presented. (1) Upon the facts found, where the damages as claimed are speculative, uncertain and unascertainable, but

a right of plaintiffs has been invaded, Will an action for damages lie, or is the remedy by injunction? (2) Is any cause for damages shown against appellant? (3) If a cause for damages against appellant is shown, what is the measure of damages?

In support of her contention appellant cites *Wabash R. Co.* v. *Engleman* (1903), 160 Ind. 329, 66 N. E. 892, in which case the complaint alleged among other things, "that said threatened occupation of the land is in derogation of the rights of the plaintiff, and if not prevented, will work irreparable damage to him." No averments were made showing the nature of the damage, nor is it shown that the trespass would be continued so as to afford foundation for a claim of title by adverse possession. Neither was it shown that the fence would be of any special damage to plaintiff. Injunction was denied on the ground that there was an adequate remedy at law. In *Richmond Nat. Gas Co.* v. *Davenport* (1905), 37 Ind. App. 25, 76 N. E. 525, the only holding which has any bearing on the question here is, that "the taking of these minerals by a stranger by means of wells made without right for such purpose constitutes a trespass, damages for which cannot be definitely measured." In *American Steel, etc., Co.* v. *Tate* (1904), 33 Ind. App. 504, 71 N. E. 189, it was held that one entitled to the exclusive right of gas and oil produced on a tract of land under an unexpired lease from the owner of the land, may enjoin the invasion thereof by a stranger, and the threatened drilling of a well by him, for the purpose of extracting gas and oil, the damage that would accrue being incapable of definite ascertainment. In *Indianapolis Nat. Gas Co.* v. *Kibbey* (1893), 135 Ind. 357, 35 N. E. 392, an action to enjoin the threatened drilling of a gas well on certain lands covered by a lease to another, which lease gave the lessee the exclusive right to the gas found on the premises, it was held that injunction was the proper remedy, as an action for damages would not have been adequate, because the dam-

age done, as affecting the flowage of gas, could not be meas-ured.  All the above cases hold, that as to a trespass upon gas and oil rights, the injury cannot be definitely measured.

In this case the claim is, that appellees should have resorted to injunction to prevent the taking of oil by appellant.  That they might have done so may be conceded, under the cases cited above, and under the rule in *Rupel* v. *Ohio Oil Co.* (1911), 176 Ind. 4, 95 N. E. 225; *Consumers Gas Trust Co.* v. *American Plate Glass Co.* (1904), 162 Ind. 393, 68 N. E. 1020.  The findings do not show when the bill of complaint was dismissed by the Circuit Court of the United States.  One finding is that "pending the litigation in the United States Circuit Court and in the Circuit Court of Appeals, on November 7, 1904," the lease was made to the Lily Oil Company, and the oil was taken between December 30, 1904 and December 9, 1905, and the cause was finally determined January 2, 1907.  Another finding is that the oil was sold January 16, 1906, and that at the time of the sale The Indiana Pipe Line Company had notice of the pendency of the action in the Circuit Court of the United States for the District of Indiana, and had been notified to hold the oil until the suit was deter-mined in that court.  Whether the cause was pending in the circuit court or had been appealed, appellees may well have hesitated to give bond so as to prevent the taking of the oil; at least it does not lie in the province of appellant to insist that they must have done so, though in view of our conclusions as to the measure of damages, if they had con-cluded that their financial interests would have been better subserved or protected, the remedy by injunction was open to them.  They may prudently have declined to avail them-selves of their right, in the light of their own experience that it would cost more to produce the oil than the oil was worth, and determined to await results, or they could have proceeded themselves, in doing which however, the longer the operation, the greater the loss, judging by the finding

in this case, and this would naturally be a convincing deter-
rent, but it does not follow that they may make profit out
of what was in fact a losing venture, by the fact of their
inaction. Save for the notice of March 20, 1904, and the
action begun in the Federal court June 10, 1904, no ob-
jection was made by either party to action by the other
to obtain oil, but we do not conceive that it was the duty
of appellees to resort to injunction. *Rupel* v. *Ohio Oil Co.,
supra,* and the complaint is not deficient in that respect.
An injunction it is true, would have prevented operation by
the Lily Oil Company if it could have been obtained, but
without a bond, operation could not have been prevented,
and had an injunction been obtained, and appellees had
proceeded, it appears that they would have done so at a
loss, and that only appellant Campbell in any event, could
have profited by reason of the royalty, independently of
who was operating the field, and there was no exclusion
or interference, molestation or protest by either party to
the other, and appellees were at liberty to proceed had
they desired, or had they felt sure of their rights, but a
strong reason for not doing so would appear to lie in their
former experience, in which at an expense of $3,830.92
they had obtained from May 18, 1904, to August 1904, un-
der skilful operation night and day, $290.09 worth of oil,
and in August, 1904, some 90 days before the new lease
was made, had practically abandoned the field. We are not
prepared to say in the light of this state of the record that
the final decision in the Federal court goes further than
to hold that the first lease was in force when that action
was begun June 10, 1904, and it may be a question for
reasonable difference whether between August and Novem-
ber, 1904, the failure to obtain oil or drill another well
amounted to a termination of the first lease, and she may
have honestly believed irrespective of the pendency of the
suit, that the subsequent events amounted to an abandon-
ment by appellees, especially in view of the fact that no

objection or protest was ·made against operation by the second lessee.

It is the theory of appellant that as the owner of the real estate she was entitled to have active operation upon her land for oil *(Indiana, etc., Oil Co.* v. *Grainger* [1904], 33 Ind. App. 559, 70 N. E. 395; *Chaney* v. *Ohio, etc., Oil Co.* [1904], 32 Ind. App. 193, 69 N. E. 477); that appellees had shown but little inclination to do so, and their efforts had been of no practical avail to her or to them, and as the matter stood at that time, under the holding of the cases there was, in practical effect, a disclosure that there was neither oil nor gas to be found in paying quantities, and that further development so disclosed; that as the oil in the earth was not the subject of property, there was no conversion of property, in any legal sense; and that as appellees' rights were those of going on the premises and exploring for oil and marketing the same, and they were not excluded from, or molested in doing so, there is first shown that there was no substantial damage to appellees' rights. Second, that she acted in good faith, and the measure of damages would be the difference between the oil when removed, and the cost of production. *Crawford* v. *Forest Oil Co.* (1904), 208 Pa. St. 5, 57 Atl. 47; *Duffield* v. *Rosenzweig* (1891), 144 Pa. St. 520, 23 Atl. 4. Third, that when a trespass is committed under an honest belief on the part of the wrongdoer, that he had a right to do what he did, the trespass is not intentional, and the wrongdoer cannot be held in damages for a greater amount than the profit the true owner would have received if he had operated. *United States* v. *Homestake Min. Co.* (1902), 117 Fed. 481, 54 C. C. A. 303; *Motrozona Gold Min. Co.* v. *Thatcher* (1904), 19 Colo. App. 371, 75 Pac. 595.

There is no allegation or finding that the entry or taking was wilful. It is alleged and found that both were wrongful and unlawful, and that the execution of the lease by appellant to the Lily Oil Company was unlawful and wrongful.

Appellees insist that the finding shows a case of wilful injury, and concede that if wilfulness is not to be inferred, the judgment must be reversed. It is well settled

3. that courts cannot add to or take from findings or conclusions by inference. It was necessarily inten-

4. tional, in that it was intended to do just what was done, but it does not necessarily follow that it was a wilful violation of appellees' rights. In Thornton, Oil and Gas §27, the rule is stated, that, if oil has been unlawfully taken from the soil, the owner whoever he may be, has the option to recover either the oil or its value. Where the act of taking is a trespass, according to our line of cases concerning solid minerals, the wrongdoer is not entitled to be credited with the cost of taking out the mineral, if he knew it belonged to the plaintiff. Another line of cases holds, in case of solid minerals, that the measure of damages is the value of the mineral as it rested in place before it was broken down. It must be patent, however, to every one, that the last rule cannot be applied to a case of oil or gas, because of the impossibility of determining the value of either gas or oil *in situ*. In case of a wilful, or negli-

5. gent trespass, the rule should follow the rule first above enumerated, and the trespasser charged with the value of the oil or gas taken without any deduction for the cost of taking it out; but if the trespasser was innocent of the fact that he was a trespasser, and is not guilty of negligence in entering upon the ground and taking the oil or gas, the cost of extracting it should be allowed him. This is the general rule where the trespasser is innocent of any intent to do wrong, and has not been guilty of negligence. We have had occasion recently, in the case of *Kahle* v. *Crown Oil Co.* (1913), *ante* 131, to go into the question of damages, and we held under the facts in that case that a wilful trespass did not appear, either under the allegations of the complaint or the finding of the court, and followed the rule that a wilful or intentional trespass must appear,

in order that the trespasser may not deduct the cost of the production of the oil. We held in *Rupel* v. *Ohio Oil Co., supra,* that oil in place adheres to the land as a part of it, but that it is not the subject of independent property rights, until it is reduced to possession.

4.  We have the additional question here as to the alleged damage to the leasehold. In *Kahle* v. *Crown Oil Co., supra,* it will be noticed that the owner of the land was not a party to the appeal; here she is a party, and there is a judgment against her. This fact is not without significance. She was asserting and insisting up to the time of the final adjudication in the Federal court that appellees' rights had terminated on May 20, 1904, but that the finding was against her on that point, does not determine the question whether there was reasonable ground to believe that the first lease had been abandoned later, and consequently she was empowered to make a new contract. The fact that she failed or was mistaken, is no evidence of lack of good faith in her position, and the same thing is true as to the lessees, so that the adjudication in the Federal court was not an adjudication of the other question, and there was a persistent insistence by her of a right to lease, so that we do not have a clear case of the invasion of an undisputed right. We held in *Kahle* v. *Crown Oil Co., supra,* that the fact that a judgment had been rendered quieting title, from which it was known that an appeal had been taken, presented such a condition that while that judgment was in force, it might be acted upon, and though reversed, acts done upon the faith of it, could not be regarded as acts of wilful trespass, because it was the assertion of a disputed right. Here appellant's bill to cancel the lease had been dismissed, but she had appealed and continued to assert her claim, and though she ultimately failed, she had a right to appeal, and to prosecute her appeal, and even though she did fail in that action, it settled no question as to whether the first lease was in force in November, 1904.

Does then the fact that she failed, or even that the first lease had not been abandoned, render her action in leasing, so far wilful as to render her liable? Conceding that she violated her first contract by executing the second, What is the measure of damages for such violation? Is it the value of the oil taken, or is it such damage as actually accrued to appellees from its violation? How are they damaged by her violation? Under the finding that it cost more to produce the oil than it was worth, they were benefited by not proceeding, for had they done so, they would have been at a positive loss. So far as appellees are concerned, their right which was invaded, was the right to explore until the oil was produced and to market the product. In *Dyke* v. *National Transit Co.* (1897), 22 App. Div. 360, 49 N. Y. Supp. 180, the lessors were in possession and claimed in good faith to be the owners of premises which were actually owned by another; it was held that the cost of producing the oil should be deducted from its value at the surface. The court says, "The distinction is between a wilful trespasser and a mistaken one. The one knows he is wrong, and the other believes he is right. When the latter is shown to be wrong, if he makes full indemnity, justice can exact no more."

It was said in *Gladys City Oil, etc., Co.* v. *Right of Way Oil Co.* (1911), 137 S. W. (Tex. Civ. App.) 171, 182, "Appellee further contends that the judgment is erroneous, in that it awards to appellants the value of the oil delivered to the * * * Company instead of such value, less the cost of extraction. We quite readily agree with appellee that appellees in boring the well and extracting the oil acted under the belief, in good faith and upon reasonable ground therefor, that they had a right to do so, and that the oil belonged to the Texas and New Orleans R. R. Co. In such case, under proper allegations and proof, it would have been proper to have deducted from the value of the oil in the tanks of the * * * Company the reasonable value of extracting the

same.'' The case is based on *Bender* v. *Brooks* (1910), 103 Tex. 329, 127 S. W. 168, 170, Ann. Cas. 1912A 559, in which it is held, that the measure of damages for unlawfully taking oil under an honest mistake as to ownership, is the value of the oil at the surface, less the value of taking it, and the royalties.

In *Duffield* v. *Rosenzweig, supra,* it is said, ''But, assuming that an action of trespass is a proper remedy, and that the defendant invaded the territory of the plaintiff's protection to put down wells, and took out oil to the amount of 8,253 barrels, * * * what should be the measure of the plaintiffs recovery? He should not be permitted to recover the price of all this oil, for the defendant was, in any event, entitled to a royalty out of it; and it does not appear, nor can it in any satisfactory way be made to appear, that the plaintiff would have been able, by any means within his power, to produce the whole, or any definite or certain portion of the oil at the sites to which he was restricted. * * * Plaintiff's title is a leasehold, and the proper measure of damages for which the defendant is liable is the difference in the value of the leasehold until the expiration of the term, free from the obstructions which the defendant's lessee's have put upon it, less the value as affected by these obstructions.''

In the case at bar, both parties rely upon that case. There, there was only a finding that so much oil was produced, and its value. Here we have a finding of the difference in value of the leasehold before entry by the Lily Oil Company, and after the oil was taken by it. The material facts in that case were, that one Elston the common source of title had executed a lease for general purposes upon the surface of a defined tract of land, to two persons named Brown. The heirs of Elston, after the execution of the general lease, executed to the surface lessees a lease for twenty years to mine and operate for petroleum. The Browns then executed a lease to one Pratt for fifteen years

for the exclusive right and privilege of digging for oil and other minerals, on the same land, but restricted the operation to seven specific lots, or sites. The rights of the Browns became vested in appellee Rosenzweig. He then leased two acres of ground, which were embraced in his holding under the Browns, to two other persons who mined the oil, which was the subject of the action. This tract of land upon which the mining was done was denominated "Millyard," but was not platted as one of the drilling sites under the Pratt lease, and neither Pratt nor Duffield, his assignee, the appellant, were ever in possession of this lot. Rosenzweig did not sublet the "Millyard" until Duffield had told him he would not put down any more wells; he had put down six. The evidence showed that 8,253 barrels of oil were produced from the well on the mill lot, and that it was of the value of $8,000. There was evidence that several other wells were operated near the plaintiff's wells on the Pratt lease, in addition to that put down by Rosenzweig's lessees, Gerould and Hue. At the time appellees put down their well in May, 1904, which was the first well in the district, no wells had been put down on lands adjoining those of appellant, but before November, 1904, a number of wells producing considerable oil had been put down on adjoining property, and near.

In *Crawford* v. *Forest Oil Co., supra*, it was held that the measure of damages for oil taken by the life tenant was the value of the oil less the cost of production. In that case as in the Duffield case *(Duffield* v. *Rosenzweig, supra)*, there was a dispute as to the right. We think it must be true that appellant was not a wilful trespasser. She was insisting on a right to the property and its control, through the courts; What more consistent and legal course, could she have pursued?

In *United States* v. *Homestake Min. Co., supra*, 486, it is said "That question (wilful trespass) is always based on the conceded propositions that the defendant has vio-

lated the law and that every man knows the law. The question, then, is, did the trespasser violate the law, which he constructively knew, recklessly, or with an actual intent to do so, and take an unconscientious advantage of his victim, or did he violate it inadvertently, unintentionally, or in the honest belief that he was exercising his own right?" She was so insisting. Appellees had had a lease for nearly seven years before any attempt was made to mine for oil or gas, and upon notice to proceed without delay, they bored one well at a heavy loss, which under skilful drilling and operation proved to be a nonpaying well, and stood by without objection, and saw the work done by appellant's second lessees, also losers, when appellees might have proceeded for anything that appears in this record. It may reasonably be inferred that had appellant's second lessees been successful in obtaining a profitable output, appellees would have also proceeded themselves, or sought injunction against the second lessees, had they been sure of their rights.

6. It is settled in this State that appellees were not the owners of the oil in the earth. *Kahle* v. *Crown Oil Co., supra; Rupel* v. *Ohio Oil Co., supra; New American Oil, etc., Co.* v. *Troyer* (1906), 166 Ind. 402, 411, 76 N. E. 253, 77 N. E. 739; *State* v. *Ohio Oil Co.* (1898), 150 Ind. 21, 31, 49 N. E. 809, 47 L. R. A. 627; *Ohio Oil Co.* v. *Indiana* (1900), 177 U. S. 190, 207, 20 Sup. Ct. 576, 44 L. Ed. 729; *Richmond Nat. Gas Co.* v. *Davenport* (1905), 37 Ind. App. 25, 76 N. E. 525; *Heller* v. *Dailey* (1902), 28 Ind. App. 555, 561, 63 N. E. 490; *Campbell* v. *Rock Oil Co.* (1907), 151 Fed. 191, 80 C. C. A. 467; *Manufacturers Gas, etc., Co.* v. *Indiana Nat. Gas, etc., Co.* (1900), 155 Ind. 461, 57 N. E. 912, 50 L. R. A. 768; *Townsend* v. *State* (1897), 147 Ind. 624, 47 N. E. 19, 37 L. R. A. 294, 62 Am. St. 477. The interest of appellees was the exclusive right to mine for oil on the premises. Whether their rights had been terminated May 26, 1904, was a subject about which there were grounds for difference of opinion, until the question was

finally determined, in the Circuit Court of Appeals. *Campbell* v. *Rock Oil Co., supra,* where the Indiana cases are collected. It will be observed that appellant did not lease the land generally, and did not surrender possession, which remained in her, subject to the right of exclusive exploration by appellees. Under the holdings in this State, oil and gas are not the subject of property until reduced to possession, hence the contract is just what it purports to be, an agreement for the exclusive right to prospect and market the product. The proposition is well stated in Bainbridge, Mines and Minerals (2d ed.) 156, 300. "There is a great distinction between a lease of mines and a license to work mines. The former is a distinct conveyance of an actual interest, or estate in lands, while the latter is only a mere incorporeal right to be exercised in the lands of others. It is a profit *a prendre* and may be held apart from the possession of land." This view is sustained in *Baker* v. *Hart* (1890), 123 N. Y. 470, 25 N. E. 948, 12 L. R. A. 60, and *O'Connor* v. *Shannon* (1895), 30 S. W. (Tex. Civ. App.) 1096.

7. The court found the fair market value of "the leasehold so owned by the plaintiffs" was $4,800, and the value of the leasehold after the oil was taken was $360, and gave judgment for the difference. This finding is attacked as being without evidence to support it. We can perceive no basis whatever for this finding. The evidence on the subject of damages is wholly speculative as to the leasehold, and necessarily so, for it would be impossible to know what amount of oil would or could have been produced had appellant's second lessee not operated, or what appellees would have obtained. Several witnesses give their opinions on an admittedly speculative basis, but all agree that the actual test of value is obtained from drilling wells, and finding what the field contains, and in this instance the evidence shows that the field was practically

worthless to anyone at any time.   The evidence is therefore wholly wanting upon which to base any difference in value of the leasehold, and the finding upon that question is without evidence to support it.   On the other hand, the evidence is very satisfactory that the contracts never had any actual value.

We think these propositions are clear from this record: (1) That it is neither pleaded, nor found as a fact, nor shown by the evidence, that appellant was a wilful trespasser.   (2) That in such case the cost of producing the oil should be deducted from its value at the surface.   (3) That appellees are not shown to have been damaged.   (4) That there is no basis for the finding and judgment against appellant to rest upon.   The judgment is reversed with instructions to the court below to sustain the motion of appellant for a new trial.

NOTE.—Reported in 101 N. E. 89.   See, also, under (1) 3 Cyc. 223; (2) 27 Cyc. 630; (3) 3 Cyc. 360; (4) 27 Cyc. 640; (5, 7) 27 Cyc. 639; (6) 27 Cyc. 724.   As to measure of damages for unintentional trespass by mining, see 54 Am. Rep. 421.