[Civ. No. 4563.   Third Appellate District.—June 22, 1932.]

C. A. JONES, Appellant, v. W. F. PIER et al., Respondents.

L. F. Coburn and Clayton L. Howland, for Appellant.

Harry L. Cohn and Merriam, Rinehart & Merriam for Respondents.

THOMPSON (R. L.), J.—The plaintiff brought this suit to quiet title to one per cent of the oil produced from lots 63 to 72, inclusive, and lots 87 to 96, inclusive, of North Long Beach tract in Los Angeles County. From a judgment which was rendered in favor of the defendants this appeal was perfected.

As a foundation for his title to an undivided one per cent of the oil produced from said tracts of land, an oil lease was offered and received in evidence. This lease was executed October 10, 1922, for the term of twenty years, to Cal-Mex Oil & Refining Company. The consideration therefor was the agreement to deliver to the lessors one-fourth of all oil, gas and other hydrocarbon substances which were produced. The lease recited that W. F. and Ellen I. Garrison, then husband and wife, owned lots 87 to 96 inclusive, and that W. F. and Agnes Pier, husband and wife, owned lots 63 to 72, inclusive. The lease was executed jointly by the four owners. It required the lessee to sink several wells within a specified time, at designated points on both tracts of land, and detailed the manner of the performance of the work. It was finally provided that if the lessee, after ten days' notice of default, failed to perform any of the covenants of the lease, that the lessors, at their option, might terminate the instrument.

The plaintiff then offered in evidence the written assignment upon which he relies for his claim of title to one per cent of the oil produced from said tracts of land. The consideration for this assignment was the payment of $6,000.

This instrument was executed April 3, 1923, and reads in part:

"We, W. F. Pier and Agnes Pier, his wife, owners by virtue of a community lease dated October 10, 1922, of . . . 12½% of the total production of oil, gas and other hydrocarbon substances extracted . . . (from the lots above mentioned) do hereby sell, assign, transfer and set over unto C. A. Jones, of Long Beach, California, one per cent (1%) of said total production; this assignment to remain effective so long as the assignee or his successors in interest, contributes one per cent (1%) of the increase of taxes upon said land resulting from the discovery of oil or gas thereon."

Without further evidence, the plaintiff rested his case.

The defendants offered in evidence the judgment-roll in a suit prosecuted in 1924 by W. F. and Ellen I. Garrison, the owners of lots 87 to 96, inclusive, against the Cal-Mex Oil & Refining Company. The court found, in that case, that the defendant was guilty of breach of the covenants of his oil lease of October 10, 1922, and thereupon decreed that, "The same is hereby cancelled . . . *so far as the same may in any way cover or pertain to* Lots 91, 92, 93, 94, 95 and 96, . . . " This decree was rendered and entered December 12, 1924. No appeal was taken from this judgment, and it became final. Neither this plaintiff, C. A. Jones, nor the other joint lessors, W. F. and Agnes Pier, were parties to that suit.

The decree in that suit did not terminate the lease. Neither W. F. and Agnes Pier, nor their successor in interest, is bound by the judgment, for the reason that both original lessors did not join in the action. The lease created a common interest in the lessors to the undivided one-fourth of all oil and gas produced from the land therein described. The interests of the lessors are not separate and distinct. The right to terminate the lease for breach of covenants therein contained, is specifically conferred upon the lessors jointly and not severally. The language of the lease in that regard is that, "If the lessee shall fail for a period of ten (10) days after written notice given to it, . . . *by the lessors* to comply with provisions of this lease, the lessors may at their option terminate this lease." This precise question was determined by the Supreme Court in *Jameson v. Chanslor-Canfield Midway Oil Co.*, 176 Cal. 1 [167 Pac. 369,

370]. In that case, except for the fact that the lessors were joint owners of undivided interests in the tract of land which was involved, it is exactly like the case at bar. That was a suit to quiet title. The three owners joined in executing a thirty-year oil lease of the premises in consideration of an undivided interest in the oil which should be produced therefrom. The lease contained a clause authorizing the termination thereof for breach of covenants, in almost the exact language of the present lease. It provided: "It is especially agreed by said parties of the second part that failure upon their part to perform any of the conditions embodied herein for a period of thirty days *after notification by the parties of the first part* to perform such conditions shall render this agreement null and void if said first parties shall so elect." The court held that: "A right given to several lessors, by a contract of lease, to declare a forfeiture for breaches of the character here involved must be exercised by all *and cannot be exercised by less than all.*"

In that case a suit to terminate the lease was maintained by two of the three owners. The third owner did not participate in that suit. The decree quieted title in the two plaintiffs to their undivided three-fourths of the land. That decree was reversed. The reasons for this reversal are assigned by the court. The court said that by the very terms of the lease, the right to terminate the instrument for breach of covenants therein contained was specifically conferred upon the lessors jointly; that by the terms of section 1431 of the Civil Code: "An obligation imposed upon several persons, or a right created in favor of several persons, is presumed to be joint, and not several."

And that section 1442 of the same code provides that: "A condition involving a forfeiture must be strictly interpreted against the party for whose benefit it is created."

The court concludes that this right to terminate the lease amounts to a forfeiture which is specifically created by the terms of the lease, and that it did not exist except for the presence of that clause in the contract, and that the lease could therefore be terminated "only by the joint action of all of the lessors". Upon the authority of that case, the decree which purports to terminate the lease in the present action as to lots 91 to 96, inclusive, upon the suit of but one of the joint lessors is ineffectual. That decree is therefore

448

void so far as W. F. and Agnes Pier and their successor in interest is concerned.

There is nothing in the case of *Black* v. *Solano County,* 114 Cal. App. 170 [299 Pac. 843], relied upon by the respondents, which is in conflict with the foregoing decision. All that the Black case determines relative to that question is that the royalties derived from an undivided interest in the production of oil under the terms of a lease, constitutes potential personal property which is subject to sale.

The case of *Merrill* v. *California Petroleum Corp.,* 105 Cal. App. 737, 743 [288 Pac. 721], upon which the respondent also relies, is readily distinguishable from the Jameson case, *supra.* The Merrill case did not involve the termination of a lease for breach of the covenants thereof. The forfeiture of a contract was not involved in that suit. It was an action to recover the purchase price of oil. It is therefore not in conflict with the Jameson decision.

Over the objection of the plaintiff, a subsequent written agreement between W. F. and Agnes Pier and W. F. and Ellen I. Garrison, dated January 19, 1925, was received in evidence. It provided that, "The parties of the first part and the parties of the second part mutually agree with each other that said community oil and gas lease may be cancelled, annulled and rescinded so far as the same relates to said lots 91 to 96 inclusive." No suit to cancel the lease was thereafter instituted pursuant to this agreement. Mr. and Mrs. Pier could not thus terminate the vested interest of the plaintiff which they conveyed to him for the consideration of $6,000, without his knowledge or consent. That agreement was ineffectual and void. It did not impair the validity of their former conveyance to the plaintiff.

The Cal-Mex Oil & Refining Company lease of October 10, 1922, remains in full force and validity, in spite of the admitted breach of covenants thereof. It is immaterial that oil was not actually produced on the property. This suit was commenced in May, 1928. The lease does not expire until October 10, 1942. The right to terminate the lease for breach of covenants is optional on the part of the lessors. They have seen fit to waive the breach thereof, except for the ineffectual effort on the part of one of the lessors with relation to lots 91 to 96, inclusive. By the terms of his assignment of April 3, 1923, the plaintiff acquired an

undivided one per cent interest in common with the lessors in all oil, gas or other hydrocarbon substances produced from the land therein described, for the term of twenty years from the date of the original lease, regardless of who produced the same. The lease created a vested right in property even though it was not accompanied by actual physical possession of the subterranean deposit of gas or oil. In the case of *Merrill* v. *California Petroleum Corp.*, 105 Cal. App. 737 [288 Pac. 721, 723], it is said:

"It appears that the deposit of oil involved was a part of the land in which it was found; that Lake's right to extract the oil was 'private property', a 'claim to land, although not accompanied by actual physical possession of the subterranean deposit'; that such claim was 'founded on a right' vested in him by the terms of the lease, a right 'coupled with an interest'. While the oil in its natural deposit was a part of the land, it was in actual existence as part of the land and was potentially personal property under the terms of the lease and actually became personal property to the extent of the amount thereof involved in this action when the lessee exercised his right to extract it."

The plaintiff is therefore entitled to have quieted in him his undivided one per cent of all oil, gas and other hydrocarbon substances which may be developed or produced from the property during the term prescribed in the original lease or until that instrument is lawfully terminated.

Any oil leases with relation to the land described in the Cal-Mex Oil & Refining Company lease of October 10, 1922, which may have been subsequently executed by the lessors, are subject to the plaintiff's prior vested right which was acquired by means of his assignment of interest as above related.

The respondent claims that the plaintiff is not entitled to quiet his title to his undivided interest in the oil, for the reason that he failed to prove that he had paid certain taxes for which he became liable under the provisions of his assignment. That instrument contained the following clause: "This assignment to remain effective so long as the assignee, or his successors in interest, contributes one per cent (1%) of the increase of taxes upon said land resulting from the discovery of oil or gas thereon." The record contains no evidence that there was an increase of

taxes on account of the production of oil or gas, or otherwise. In fact, the defendants admitted, ''there was never any production (of oil or gas) under the Cal-Mex lease''. It thus appears no obligation to pay taxes was imposed on the plaintiff.

The judgment is reversed.

Parker, J., *pro tem.*, and Plummer, Acting P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 22, 1932, and an application by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 18, 1932.