[Civ. No. 8999. First Appellate District, Division Two.—June 13, 1933.]

S. K. BEAM et al., Appellants, v. JOHN DUGAN et al., Respondents.

A. E. Garten and Vern E. Garten for Appellants.

Koenig & Brunton, Andrews & Andrews, Jerry H. Powell and Wellborn & Wellborn for Respondents.

NOURSE, P. J.—The plaintiff sued to quiet title and for an accounting claiming under a sale and two assignments of portions of a land owner's royalty in oil aggregating one per cent of the total royalty payable to their grantors. Defendants had judgment and the plaintiffs appeal upon typewritten transcripts.

The conveyances to the plaintiffs and to their assignors were executed in March, 1923. In form and substance they are identical. The one to the plaintiffs after describing the real property by metes and bounds recites: "And whereas, said above described property, together with other property, has been leased for oil development under a lease, of date, July 18, 1922, between John Dugan and wife and others, as lessors, and Vern Dumas and wife, as lessees, . . . and it being provided among other things in said lease that the owners of said property, covered by said lease, shall receive a royalty of one fifth (1/5) of all oil or kindred substances developed on said lease. . . .

"And whereas, S. K. Beam and Nora B. Beam, husband and wife, desires to purchase, and does hereby purchase a 3/5 of 1 per cent (1%) *land owner's royalty in said above described property.*

"Now, therefore, we . . . do hereby sell, transfer, convey, assign and set over to the said S. K. Beam and Nora B. Beam . . . *out of our land owner's royalty,* an undivided 3/5 of 1 per cent (1%) *in and to any and all oil, gas* or other hydro-carbon substances *produced or saved from any wells to be drilled upon any of the land described* in the lease heretofore mentioned . . . it being particularly understood and agreed that the royalty interest, herein assigned, affects all the land mentioned in said lease and is not limited to the land of said Dugans." The final stipulation in the conveyance is thus explained: In July, 1922, prior to the date of the execution of these conveyances, the Dugans and six other land owners had executed an oil and gas lease to Vern Dumas and his wife; after the execution of that lease the Dugans conveyed a small portion of the land covered by the Dumas lease to others, and, therefore, in the conveyances to the plaintiffs and to their assignors the Dugans made this stipulation that the interest in the royalty which they thus conveyed included oil or gas that might be obtained from wells covered by the Dumas lease though outside of the lands then held by the Dugans in fee.

In January, 1928, the Dugans obtained quitclaim deeds from Vern Dumas and his wife and from numerous other persons claiming interests arising out of the Dumas lease and soon thereafter executed a new oil and gas lease to Vern Dumas and wife covering a portion of the lands de-

scribed in the conveyances to the Beams and their assignors. Acting under the lease of 1923 the lessees drilled a well on the premises to a depth of thirty-five hundred feet, but failed to develop oil or gas. This well was not working at the time the conveyances were made and it does not appear that any further drilling was had under the original lease. Under the lease of 1928 new wells were drilled and production was obtained for which appellants demand an accounting.

The primary issue urged by appellants is whether the conveyances to them and to their assignors carried such an interest in the lands described therein as would entitle the grantees to a perpetual interest in the royalty paid to their grantors on any oil produced and saved from the premises.

It has been frequently held that oil in place is a part of the realty and does not take on the character of personal property until severed from the realty (*Taylor* v. *Hamilton*, 194 Cal. 768, 774 [230 Pac. 656], and cases cited); that a contract for the sale of oil from the owner of the land does not create an interest in the real property, but is a plain contract for the sale of personal property if and when that property comes into the possession of the land owner (*Richfield Oil Co.* v. *Hercules Gasoline Co.*, 112 Cal. App. 431, 435 [297 Pac. 73]); and that until the oil has become personal property through severance from the land the title to the oil rests in the owner of the land. (*Black* v. *Solano Co.*, 114 Cal. App. 170, 174 [299 Pac. 843].) The conveyances here in suit transfer "out of our land owner's royalty an undivided 3/5 of 1 per cent in and to any and all oil . . . produced and saved from any wells to be drilled". The land owner's royalty was in the nature of a rental paid by the lessees for the privilege of drilling for and extracting oil from the land. (*Acme Oil & Min. Co.* v. *Williams*, 140 Cal. 681, 684 [74 Pac. 296].) Thus in selling a portion of their land owner's royalty in any and *all* oil produced or saved from *any wells to be drilled* upon "any of the land described", the vendors were selling an interest in their right as owners of the land to take and receive rental by way of a royalty upon all oil which might be produced. But the conveyances do not limit the rights of the vendees to the royalty paid under the first lease to Dumas. That lease seems to

have been mentioned in the conveyances for the single purpose of conferring upon the vendees the right to participate in the royalties paid under that lease upon oil which might be produced from lands covered by the lease but not held in fee by the grantors.

■ The evidence discloses without conflict that it was a well-recognized custom in the community to refer to "land owner's royalty" as a perpetual interest not limited to any particular lease and that, when an interest in a royalty limited to a particular lease was dealt with such interest was commonly referred to as "an overriding royalty". Adopting the well-known rule of construction that a conveyance of this character must be construed most strictly against the grantor it would seem that the intention of the parties was that the conveyances covered royalties to be paid upon any oil produced from the land, irrespective of under what lease such oil may be produced, otherwise it would have been a simple matter for the grantors to follow the customary course of expressly limiting the rights of the vendees to the royalties to be paid under the existing lease.

■ But if this is not a reasonable construction of the conveyances the appellants are nevertheless entitled to relief under another theory which is advanced in *Jones* v. *Pier,* 124 Cal. App. 444 [12 Pac. (2d) 646, 647]. In that case a lease was executed in 1922 for a term of twenty years, there being four joint lessors. Thereafter two of these lessors executed an instrument reciting that "by virtue of a community lease dated October 19, 1922", they were owners of 12½ per cent "of the total production of all oil . . . " and that they thereby sold to Jones one per cent "of said total production". Thereafter the other joint lessors obtained a judgment in the superior court canceling the lease in respect to certain lots owned by them. Neither the plaintiff Jones nor his assignors were joined in that action. Thereafter all the lessors joined in an agreement canceling the lease in so far as it related to certain lots covered by the judgment mentioned. The plaintiff Jones was not a party to that agreement. Oil was produced in paying quantities under the second lease or agreement and Jones brought an action to quiet title to an undivided one per cent of the royalties paid thereunder. Judgment went for the defendants and on appeal this judgment was re-

versed by the District Court of Appeal of the Third Appellate District. A transfer to the Supreme Court was denied.

In reversing the case the appellate court, relying on *Jameson* v. *Chanslor-Canfield Midway Oil Co.*, 176 Cal. 1 [167 Pac. 369], held that inasmuch as the right to terminate the lease for breach of covenants therein contained was specifically conferred upon the lessors jointly, therefore no less than all could either by agreement or by action in court cause a cancellation of the lease and also, that by the terms of his assignment, Jones had acquired an undivided one per cent interest in common with the lessors in all oil and gas produced upon the land described for the term of twenty years from the date of the original lease, regardless of who produced the same. It was said that the lease created a vested right in property even though it was not accompanied by actual physical possession of a subterranean deposit of gas or oil and that, because of the assignment to Jones of an undivided interest in common with the lessors in these deposits, no one of the lessors could terminate the interest thus vested in Jones without his knowledge or consent. For these reasons it was held that Jones was entitled to have quieted in him his undivided one per cent of all such deposits developed or produced from the property during the term prescribed in the original lease and that any leases with relation to the land which may have been subsequently executed by the lessors were "subject to the plaintiff's prior vested right which was acquired by means of his assignment".

The rule of *Jones* v. *Pier, supra,* would seem to determine the rights of the appellants in this action. When the conveyances were made to these appellants eight land owners had executed a community lease embracing property owned by appellants' grantors. The lease was to run for a period of twenty years. It provided for the payment "as royalty and rent" for the premises one-fifth part of all oil, gas and other hydrocarbon substances "produced and saved" from said premises and allotted to appellants' assignors eight-tenths of said royalty. These parties then sold to the appellants and to their assignors one per cent of the royalty allotted to them under the terms of the lease. The lease did not reserve to any one of the lessors the right to cancel it or to declare a forfeiture. Under the rule of

*Jones* v. *Pier, supra,* the appellants purchased some vested interest which they were entitled to have quieted in this proceeding.

■ We purposely refrain from deciding at this time what interests the appellants acquired by their purchase because that is an issue which the trial court must determine upon an interpretation of the instruments from the intentions of the parties in the light of the surrounding circumstances and the prevailing customs. Here the trial court found that the appellants acquired nothing. For the reasons which we have heretofore given this finding was error. As the cause must be tried anew it might be well to direct attention to the conflicting doctrines relating to interests of this character. There is a line of decisions found in West Virginia, Texas and Kentucky holding that oil and gas in place are minerals subject to separate ownership, severance and sale in like manner as coal and other solid minerals and that a reservation, exception or sale of royalties to be recovered from such products is in effect a reservation, exception or sale of the *corpus* of the minerals—that a sale of the profits of land is a sale of a right in the land itself following the statement in Coke Lit. 4b, ''For what is land but the profits thereof?'' (See *Paxton* v. *Benedum-Trees Oil Co.,* 80 W. Va. 187 [94 S. E. 472]; *Stephens County* v. *Mid-Kansas Oil & Gas Co.,* 113 Tex. 160 [254 S. W. 290, 29 A. L. R. 566]; *United Fuel Gas Co.* v. *Swiss Oil Corp.,* 41 Fed. (2d) 4.) The contrary view—that there can be no grant or conveyance of oil or gas in place separate or apart from the right to go on the premises and extract them—is followed in Oklahoma, Kansas and Indiana (1 Thornton's Law of Oil & Gas, p. 148; *Rich* v. *Doneghey,* 71 Okl. 204 [177 Pac. 86, 3 A. L. R. 352]; *Miller* v. *Sooy,* 120 Kan. 81 [242 Pac. 140]; *Campbell* v. *Smith,* 180 Ind. 159 [101 N. E. 89].) In Ohio the courts seem to take a middle ground, holding that while oil and gas in place are capable of separate reservation or conveyance it is not necessary to adopt the rule of the West Virginia and similar jurisdictions that a reservation or sale of the royalties is a reservation or sale of the *corpus* of the mineral. (*Pure Oil Co.* v. *Kindall,* 116 Ohio St. 188 [156 N. E. 119, 123].) Numerous cases from these and other jurisdictions are cited in *Dunlap* v. *Jackson,* 92 Okl. 246 [219 Pac. 314].

 With these conflicting views of the character of the deposits in place there is, however, an unanimity of opinion that a reservation or sale by the land owner of an interest in the royalty or the rentals to be obtained from the land creates in the purchaser a right incident to the land itself which cannot be defeated by the act of the land owner without the consent of the purchaser. Whether we adopt the rule that the conveyances which are the subject of this litigation gave to the purchasers an interest in the oil and gas in place, an interest running with the land, or an interest in all royalties paid for a period of twenty years from the date of the outstanding lease, under the rule of *Jones* v. *Pier, supra,* it is manifest that the purchasers secured from the land owners such an interest in the royalties paid under the second lease as would entitle them to an accounting and an adjustment of their rights.

At the close of plaintiffs' case dismissals were entered in favor of the fictitious defendants sued as John Doe numbers I, II and III, Jane Doe numbers I,, II and III, John Doe Corporation numbers I, II and III and also the Union Oil Co. The motions for a nonsuit of Edward L. Doheny, Lucy Smith Doheny, Carrie Estelle Doheny and Lucy Smith Doheny as administratrix were granted. When the judgment was entered the court inadvertently included the "Petroleum Securities Corporations (*sic*)" as one of the defendants as to which a nonsuit was granted. As no motion was made by that defendant and no nonsuit granted the judgment was erroneous in that respect.

As to those defendants in whose behalf a nonsuit was granted, and as to those for whom dismissals were entered, the judgment is affirmed. As to all other defendants it is reversed.

Sturtevant, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 13, 1933, and an application by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 10, 1933.