[Civ. No. 8658. Second Appellate District, Division One.—May 22, 1935.]

MARGARET DENSMORE, Appellant, v. GEORGE CHAINEY et al., Defendants; THOMAS KELLY AND SONS, INC., Respondent.

Claud B. Andrews and Rodney F. Williams for Appellant.

John C. Gillham for Respondent.

ROTH, J., *pro tem.*—Appellant Margaret Densmore and her husband, Darlot Densmore, during his lifetime on March

29, 1921, entered into an agreement with George and Kate Chainey to sell certain real property, reserving title in themselves until the amount required had been paid and the other terms of the agreement complied with, pursuant to which the Chaineys entered into possession of the property. (Unless otherwise stated, the term "appellant" when hereafter used is intended to include both Densmores.)

On July 13, 1921, the Chaineys as lessors entered into an oil and gas lease, hereinafter referred to as original lease, with Oceanic Oil Company, as lessee, for a term of twenty years, lessee therein to have the right to continue to operate and produce as long thereafter as it could be done in paying quantities. On June 23, 1921, appellant consented in writing to the execution of said lease, but two days prior thereto appellant and the Chaineys had entered into a written agreement referred to hereinafter as sales agreement. In the sales agreement the Chaineys are the first parties and the Densmores the second parties. It is recited that the Densmores are the owners of the property which is then described, and which is the same property demised in the original lease, and thereafter said sales agreement reads as follows:

"Whereas, by a certain contract of sale dated March 29th, 1921, the second parties agreed to sell and the first parties agreed to buy the said property; and

"Whereas, the first parties did on the 13th day of June, 1921, enter into a certain Oil and Gas Lease with the Oceanic Oil Company, providing for the exploration and exploitation of said property; and .

"Whereas, it is the desire of the parties hereto to divide between them the royalty that may be received under said lease.

"Now, Therefore, in consideration of the mutual concessions of the parties hereto and the execution of the said lease by each of the parties, it is agreed as follows:

"1. That the one-sixth ($\frac{1}{6}$) royalty shall be divided equally between the first and second parties, until the second parties shall have received the full amount due them under the said contract of sale, together with accrued interest.

"2. After the second parties have received the full amount called for above then the royalty shall be divided three-fifths ($\frac{3}{5}$ths) to the first parties and two-fifths ($\frac{2}{5}$ths) to second parties.

"3. Nothing herein shall relieve the first parties from strict compliance with the contract of purchase or its making of the payments therein called for, excepting that they shall be credited on said contract with all money received by second parties as provided for in paragraph 1.

"4. A copy of this Contract shall be filed with the Oceanic Oil Company and they are hereby instructed to pay the royalty as herein provided.

"Executed in Triplicate the day and year first written.

"(Signed)  GEORGE CHAINEY
"(Signed)  KATE GRAY CHAINEY, First Party
"(Signed)  DARLOT DENSMORE
"(Signed)  MARGARET DENSMORE, Second Party."

On or about January 16, 1923, before any oil was produced from the property, the Chaineys completed their conditional purchase agreement with appellant and received a grant deed to the property free from any reservations. Prior to the commencement of drilling operations respondent Thomas Kelly and Sons, Inc., became sublessee of Oceanic Oil Company on the property here involved. It is admitted that respondent had actual notice of the sales agreement and it is also admitted that appellant Margaret Densmore has properly succeeded to the interest of her deceased husband who died in December, 1926.

The original lease with reference to the payment of royalty provided "The Lessee shall pay the Lessors, as royalty and rent for said premises, the one-sixth part of all oil, gas asphaltum, or other hydrocarbon substances extracted and saved from said premises." During the first part of the year 1928 respondent proposed to its sublessor Oceanic Oil Company, the Chaineys and appellant Margaret Densmore that it would sink a well, to be known as Kelly's Well No. 2, at a cost of approximately $100,000 on the condition that the Oceanic Oil Company would reduce the overriding royalty called for in the sublease from 18⅓ per cent to 10 per cent, and that the Chaineys and appellant Margaret Densmore would reduce the land owners' royalty called for in the original lease from 16⅔ per cent to 10 per cent, such reduction to be effective only as to the production of the proposed Kelly Well No. 2. The consents of Oceanic Oil Company and the Chaineys were obtained, but appellant Margaret Densmore

steadfastly refused such consent and did not give it. Respondent, nevertheless, proceeded to drill Kelly Well No. 2, and completed the same at a cost in excess of $100,000, placed the same on production and paid the royalties called for in accordance with the consents which had been previously obtained. Appellant Margaret Densmore received $\frac{2}{5}$ of the 10 per cent paid as land owners' royalty on Kelly Well No. 2 and alleges that the difference between $\frac{2}{5}$ of the 10 per cent actually received to and including March 20, 1932, and $\frac{2}{5}$ of $16\frac{2}{3}$ per cent called for by the original lease is $5,089.30, no part of which has been paid and prays for judgment in that amount. Appellant's prayer was refused, judgment given for respondent and from that judgment she appeals.

Prior to the commencement of the present action, the Chaineys filed an action on August 17, 1928, which eventually reached this court (*Chainey* v. *Shostrom*, 119 Cal. App. 237 [6 Pac. (2d) 353]), the purpose of which action was to have the sales agreement canceled and for an accounting, on the theory that the agreement to divide the royalty or rent to be received under the original lease amounted to a reservation or interest in the land, and, not being reserved in the deed, was waived. The court in that case summarized the facts, and on page 239 says: ''In closing the transaction a deed was executed by the Densmores and deposited with an escrow holder to be delivered to plaintiffs upon the payment of the balance due. A clause included in the signed escrow agreement read as follows: 'It is understood by the parties hereto that the royalties on the oil lease on this property is for $\frac{1}{6}$ of production and that the same is to be distributed $\frac{3}{5}$ths to purchaser and $\frac{2}{5}$ to seller for life of lease.' The deed executed by the Densmores and delivered to plaintiffs pursuant to the escrow instructions was in the ordinary form of a grant deed and made no mention of the royalty. Thereafter oil was produced and the royalty, received each year under the lease and divided by plaintiffs and the Densmores under the terms of their contract, ran into large sums of money. Apparently no dispute arose until the plaintiffs sought to obtain the consent of defendant Margaret Densmore to a modification of the terms of the lease with the lessee. Upon her refusal to consent thereto, plaintiffs brought this action. Contrary to the contentions of plaintiffs, the trial court by its judgment declared in effect that the

contract relating to the division of the royalty was a valid and existing contract; that defendant Margaret Densmore was entitled to ⅖ of the royalty received and to be received under the terms of said lease; and that plaintiffs were not entitled to recover from said defendant any of the money theretofore paid under the terms of said contract. . . . ''

With reference to the contention of the Chaineys in said action, the court said: ''We deem it unnecessary to enter into discussion of whether the contract created 'an interest in the land' as contended by appellants as we do not believe that the rights of the Densmores under the contract would be affected by a determination of that question. Both the terms of the contract and the terms of the escrow agreement under which the deed was delivered showed that it was at all times the intention of the parties that the Densmores' right to share in the royalty should continue for the life of the lease and after the payment of the purchase price and the transfer of title to appellants. Under these circumstances the deed transferring title to appellants cannot be relied upon as a waiver of the rights of the Densmores under the contract. We are of the opinion that the trial court properly decreed that the grant deed did not impair or in any manner affect the right of the Densmores to continue to receive their agreed share of the royalty.''

It seems clear to us that by the sales agreement the Chaineys, in consideration of the consent of the appellant given to the execution of the original lease, sold to appellant an equal portion of the royalty upon certain conditions and thereafter a ⅖ portion of the royalty reserved in the original lease for the term thereof; that this sale was brought home to the Oceanic Oil Company is not disputed, and it is stipulated that the respondent Thomas Kelly and Sons, Inc., also knew the facts. Under such circumstances, the language of the court in the case of *Beam* v. *Dugan,* 132 Cal. App. 546, 553 [23 Pac. (2d) 58], where an analogous situation is considered, is appropriate and applicable: ''With these conflicting views of the character of the deposits in place there is, however, an unanimity of opinion that a reservation or sale by the land owner of an interest in the royalty or the rentals to be obtained from the land creates in the purchaser a right incident to the land itself which cannot be defeated by the act of the land owner without the consent of the purchaser. Whether

we adopt the rule that the conveyances which are the subject of this litigation gave to the purchasers an interest in the oil and gas in place, an interest running with the land, or an interest in all royalties paid for a period of twenty years from the date of the outstanding lease, under the rule of *Jones* v. *Pier, supra* (124 Cal. App. 444 [12 Pac. (2d) 646]), it is manifest that the purchasers secured from the land owners such an interest in the royalties paid under the second lease as would entitle them to an accounting and an adjustment of their rights." (*Western Oil etc. Co.* v. *Venago Oil Corp.*, 218 Cal. 733 [24 Pac. (2d) 971, 88 A. L. R. 1271]; *Jones* v. *Pier*, 124 Cal. App. 444 [12 Pac. (2d) 646]; *Callahan* v. *Martin*, 3 Cal. (2d) 110 [43 Pac. (2d) 788].)

So, in this case, it is manifest that appellant as purchaser secured from the Chaineys, the lessors in the original lease, who after they had obtained the consent of the appellant, were for all practical and legal purposes in the position of land owners so far as the original lease was concerned, "such an interest in the royalties" to be paid under the original lease as would entitle appellant to an accounting from anyone who ignored appellant's rights.

The judgment is reversed. Since all the facts of the instant case are stipulated, the trial court is directed to enter judgment for appellant in the amount prayed for.

Houser, Acting P. J., and York, J., concurred.