[Civ. No. 11322. First Appellate District, Division Two.—February 28, 1940.]

S. K. BEAM et al., Appellants, v. JOHN DUGAN et al., Respondents.

A. E. Garten, Vern E. Garten and Clayton L. Howland for Appellants.

Jerry H. Powell, Swaffield & Swaffield, Kenneth Sperry and Joseph E. Madden for Respondents.

NOURSE, P. J.—Plaintiffs sued to quiet title and for an accounting, claiming under a sale and two assignments of portions of a landowner's royalty in oil and gas aggregating one per cent of the total royalty payable to their grantors. Defendants had judgment, and the plaintiffs appeal.

At the time of the conveyances to plaintiffs there was an outstanding oil and gas lease on the property, which had nineteen years yet to run, and which is referred to herein as the Dumas community lease. This lease was later surrendered when the oil well had proved dry, and a new lease

was executed under which a new well was sunk a short distance from the other and oil was discovered in paying quantities. Plaintiffs claim, as grantees of the landowner, a share in the profits of the land, while the defendants claim that their rights were limited to a share of any proceeds which might have been received under the Dumas community lease only.

The pertinent portions of the conveyances, or assignments, under which the plaintiffs claim read: ''And whereas, S. K. Beam and Nora B. Beam, husband and wife, desires to purchase, and does hereby purchase a ⅗ of 1 per cent (1%) *landowner's royalty* in said above described property.

''Now, therefore, we . . . do hereby sell, transfer, convey, assign and set over to the said S. K. Beam and Nora B. Beam . . . *out of our landowner's royalty,* an undivided ⅗ of 1 per cent (1%) *in and to any and all oil, gas* or other hydrocarbon substances *produced or saved from any wells* to be drilled upon any of the land described in the lease heretofore mentioned . . . it being particularly understood and agreed that *the royalty interest, herein assigned, affects all the land mentioned in said lease and is not limited to* the land of said Dugans.'' (Emphasis ours.)

The cause was before this court on a former appeal. (132 Cal. App. 546 [23 Pac. (2d) 58].) It was then determined that plaintiffs' interest was not confined to the Dumas lease, but that they had secured from the landowner ''such an interest in the royalties *paid under the second lease* as would entitle them to an accounting and an adjustment of their rights.'' When the cause was heard for the second time the trial court declined to follow this direction and found that plaintiffs had no interest whatever in the proceeds paid under the second lease, and were not entitled to an accounting. On this appeal we will disregard all the points raised by appellants except that of the ''law of the case''.

In the former opinion we discussed the conflicting rules concerning the rights obtained by purchasers under conveyances similar to those in this litigation; we referred to the line of decisions holding that the purchaser takes an interest in the oil and gas in place, and the line of decisions holding that he takes an interest running with the land similar to a profit *à prendre.* We also referred to the rule an-

nounced in *Jones* v. *Pier,* 124 Cal. App. 444 [12 Pac. (2d) 646], that the purchaser obtained an interest in common with the landowner in all oil and gas produced upon the land for the full term of the original lease, regardless of who produced the same. In that case, as here, the landowner canceled the lease outstanding when the interests were sold and all the proceeds of production arose under a new and independent lease. The appellate court recognized the vested interest of the purchaser and held that this could not be defeated by a cancellation of the original lease without his consent.

Since the decision on the former appeal, the Supreme Court approved the rule of *Jones* v. *Pier, supra,* and the holding of this court that the purchasers took an interest in the land in *Callahan* v. *Martin,* 3 Cal. (2d) 110, where, at page 125 [43 Pac. (2d) 788, 101 A. L. R. 871], referring to *Jones* v. *Pier, supra,* it was said: ''The appellate court held that under an assignment of oil royalty limited to the duration of a particular lease, the operating lease cannot be terminated by agreement between the lessors and operating lessee without the consent of the assignee of an oil interest. This decision was recognized with approval in *Metzler & Co. of California* v. *Stevenson,* 217 Cal. 236 [18 Pac. (2d) 330], and in *Beam* v. *Dugan, supra,* in which this court denied a petition for hearing.

''In *Beam* v. *Dugan, supra,* it was held that the rights of the assignee of oil royalty to share in oil produced extend not only to the lease in effect at the time the assignment is made, but to all future leases where the assignment of oil rights is unlimited in duration. In *Jones* v. *Pier, supra,* it was held that where the assignee's rights are limited to a particular lease, said lease cannot be terminated without the assignee's consent. Where, under the assignment of oil rights, the assignee's rights are not limited to a particular lease, but are in perpetuity, under the rule of *Beam* v. *Dugan, supra,* that the assignee's rights extend to oil produced under all leases, it must be held that such future leases cannot be terminated without the assignee's consent. It must follow, if such assignee must be a party to any lawful termination of leases, that he must have a right to participate in entering into new leases for production of oil upon the premises. We are of the view that an assignee of a royalty interest be-

comes in effect a tenant in common with his assignor who retains an interest in the oil rights, and with other assignees of percentage interests, in the right which the assignor had, by virtue of his ownership of the fee in the land, to drill for and produce oil.''

In the Callahan case the Supreme Court adopts the prevailing rule recognizing oil royalties as rents and hence an assignment of oil royalty by a landowner ''as a transfer of an interest in real property''. *Beam* v. *Dugan, supra,* was cited by the court as one of the many California cases holding to that rule. In the former opinion this court endeavored to make clear that the plaintiffs' interests were not confined to the original lease, that ''the appellants purchased some vested interest which they were entitled to have quieted in this proceeding'' (132 Cal. App., p. 552) ; and that ''the purchasers secured from the landowners such an interest in the royalties *paid under the second lease* as would entitle them to an accounting and an adjustment of their rights''. Under this ruling the trial court was limited to the taking of an account of all profits from the production of oil and gas under whatever lease they should be produced. The appellants were entitled to a judgment for the recovery of the agreed percentage of such profits according to their several contracts.

As to the issue pleaded seeking to quiet their title, appellants' case now presents an interesting and novel problem. Following the opinion on the former appeal the Supreme Court in the Callahan case interpreted the judgment to mean that these appellants had a present estate or interest in the land, with the right to participate in entering into new leases for production of oil on the premises and that such an assignee or purchaser ''becomes in effect a tenant in common with his assignor who retains an interest in the oil rights, and with other assignees of percentage interests, *in the right which the assignor had, by virtue of his ownership of the fee in the land, to drill for and produce oil''.* (Emphasis ours.)

Hence, it is wholly immaterial whether the interests which the appellants have flow from any particular one of the three rules of decision mentioned in the former opinion. Such interests are no longer a question of fact to be determined by trial. It is now purely a matter of law—the appellants are entitled to participate in the proceeds of the production of

oil and gas upon the premises in accordance with the settled rules of law heretofore noted. When the former opinion was written we noted the confusion in the decisions and the conflict of authority as to the *theory* upon which rights such as those asserted by plaintiffs were recognized in the law. Following that decision the Supreme Court in *Callahan* v. *Martin, supra,* and *Dabney-Johnston Oil Corp.* v. *Walden,* 4 Cal. (2d) 637 [52 Pac. (2d) 237], rejected the "oil and gas in place" doctrine, but plainly ruled in the latter case that "oil rights may be recognized and transferred as interests in real property on other theories which give due recognition to the fugacious character of the substances involved". In the same case the court approved the finding of the trial court as based upon "the abundance of evidence offered to show that the term 'landowner's royalty', unless clearly and unequivocally limited to royalty payable under a particular lease, was generally regarded in Southern California as an unlimited, permanent interest, in contrast with interests created by lessees, which by necessity must fall with the lease".

A further reason for so holding was thus stated: "Language of a grant is to be construed most strongly against the grantor. An assignment of oil royalty limited to a particular lease is precarious. Not only may the assignee's rights be terminated where the lessee wrongfully abandons the lease, but oil leases frequently contain rather broad provisions giving the lessee the right to terminate lawfully in specified contingencies. An intent to thus limit the rights of the assignee should be clearly and unequivocally indicated."

In our former opinion we referred to the same rule of construction of written instruments and to the abundance of evidence of the settled custom in the community recognizing a "landowner's royalty" as a "perpetual interest not limited to any particular lease". For these reasons we then held that "the purchasers secured from the landowners such an interest *in the royalties paid under the second lease* as would entitle them to an accounting and an adjustment of their rights".

We have in the former opinion an interpretation of the written instruments under which the appellants claim. Whether this interpretation be right or wrong it is now final and conclusive. It is settled law that constructions of writ-

ten instruments are decisions upon questions of law and become the law of the case when the retrial is heard upon the same or merely cumulative evidence. (2 Cal. Jur., p. 1046.) See *Jones* v. *Pier,* 12 Cal. App. (2d) 282 [55 Pac. (2d) 259]. This then was the "case" which the trial court had for decision—a ruling upon the law that plaintiffs had an interest in the proceeds from oil and gas production irrespective of the original lease. The theory upon which such interest is founded has since been determined by the Supreme Court, and the plaintiffs were therefore entitled to an accounting and to a determination of their legal interests as herein stated.

There is no need, therefore, for a retrial of any issue of fact, except in relation to the accounting of profits due unless the parties should stipulate as to such amount. The complaint herein was filed November 6, 1929. This is the second trial and the second appeal, and the voluminous transcript shows that the expense of the litigation has been high. There is no sound reason why this expense should be increased or the litigation prolonged. The parties having stipulated that there was impounded and held on hand at the time of the trial the sum of $5,501.86 as representing the full one per cent of the proceeds from the production of said property up to the time of trial, the trial court is directed, upon entry of the *remittitur,* to order paid to plaintiffs forthwith so much thereof as is due them, and thereupon to take an accounting, if such is necessary, to determine whether any further sum has become due plaintiffs, and to enter judgment therefor, and to quiet the title of plaintiffs as prayed, in accordance with the views herein expressed.

The judgment is reversed with the directions heretofore noted.

Sturtevant, J., and Spence, J., concurred.

A petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 25, 1940. Carter, J., voted for a hearing.