[Civ. No. 10476.   Third Dist.   Mar. 19, 1963.]

ANTOINETTE BOLTZEN, Plaintiff and Respondent, v. SUE CLOWDSLEY, as Administratrix, etc., et al., Defendants and Appellants.

Thompson, Waters & Moss, Nossaman, Thompson, Waters & Moss, Robert B. Krueger and Alvin S. Kaufer for Defendants and Appellants.

Jones, Lane & Weaver, Neal McCrory, Landels, Weigel & Ripley, Landels, Ripley, Gregory & Diamond and Edward D. Landels for Plaintiff and Respondent.

SCHOTTKY, J.—Sue Clowdsley, as administratrix with the will annexed of the estate of Fred G. Emry, deceased; Charles E. Walker; and Eunice C. Emry have appealed from a judgment in favor of Antoinette Boltzen in an action brought by her to quiet title to certain property in San Joaquin County.

In August 1930 Sarah Ann Donlin, respondent's predecessor in interest, leased 200 acres of land she owned to the Union Oil Company. This lease was the customary oil and gas lease and provided that the lessee could quitclaim the lease at any time.

A short time later appellant Walker, acting on behalf of himself and Emry, contacted Mrs. Donlin and obtained an oil and gas lease to the remaining 40 acres of farm land. At about the same time Walker negotiated with Mrs. Donlin for an assignment of a portion of the royalties payable under the Union Oil Company lease. Walker prepared an "Assignment of Royalty" which read as follows:

"For and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, to me in hand paid by Charles E. Walker and Fred G. Emry, the receipt whereof is hereby acknowledged, I hereby sell, assign and transfer to Charles E. Walker and Fred G. Emry, their heirs, admr's. and assigns all of my right, title and interest in

2½% (1/5 of my 12½% Royalty) in all oil, gas and by-products produced on my tract of land in San Joaquin County, California, described as follows:

". . . [description], and according to that certain oil and gas lease, dated August 26, 1930, given by me to the Union Oil Company of California and recorded in Book 337, page 297, in the records of the Recorder's Office at Stockton, San Joaquin County, California."

The Union Oil Company quitclaimed its lease in 1930. Walker and Emry quitclaimed their lease in 1936.

In 1958 respondent Antoinette Boltzen executed an oil and gas lease in favor of one Kenneth H. Hunter, Jr. This lease is currently in effect and respondent is receiving royalty payments for gas produced.

Respondent then learned of appellants' claim to a share of the royalties and brought this action.

The main issue in the case, as stated by the trial court, was "whether by the terms of the instrument Charles E. Walker and Fred G. Emry were granted a perpetual interest in the oil, gas and by-products produced on the real property referred to in the instrument, or whether the term of their interest in the oil and gas was co-existent with the term of the oil and gas lease dated August 26th, 1930 and entered into between Sarah Ann Donlin and the Union Oil Company."

The trial court found "That the term of the interest granted to the said Fred G. Emry and Charles E. Walker by said 'Assignment of Royalty' was limited in duration to the term of the Union Oil Company lease which is referred to in said Assignment of Royalty."

Appellants make a vigorous attack upon this finding. Appellant Walker testified that he was familiar with oil leases; that he drafted the assignment in question; and that he was aware of the Union Oil Company lease. He then testified in part as follows: "Q. And at that time you told her that you would like to buy a part of the royalty from the Union Oil lease, did you not? A. Yes, I told her that, I came out there to see if I could buy a part of their royalty, that I understood they had twelve and a half per cent of oil, the royalty on all the oil produced there. Q. Yes. A. That we wanted to buy two and a half per cent. Q. Of the Union Oil—A. We wanted to buy two and a half per cent of all the oil produced there which would leave them—them ten per cent—Q. Yes. A. (Continuing)—of all the oil produced there, that if we bought part of it she would have sure money, but if they drilled a

well and didn't get anything she wouldn't have anything. Q. Yes. And while you were—in the same conversation while you were talking to her about this you were talking to her about her twelve and a half per cent in the Union Oil lease, weren't you? A. Well, naturally would—naturally would be talking to her about the twelve and a half per cent royalty. Q. Under the Union Oil lease, isn't that right, because that is the only royalty she had at that time, wasn't it? A. Yes, as far as I know it was.''

Appellants' major contention is : ''Where, as here, an instrument assigns a stated portion of the assignor's right, title and interest in oil, gas and by-products produced from lands described by metes and bounds and by reference to an existing oil and gas lease, the instrument is not ambiguous and the estate so assigned is unlimited in duration.''

Appellants rely heavily on the case of *Beam* v. *Dugan,* 132 Cal.App. 546 [23 P.2d 58], in which the primary issue urged by appellants was whether the conveyances to them and to their assignors carried such an interest in the lands described therein as would entitle the grantees to a perpetual interest in the royalty paid to their grantors on any oil produced and saved from the premises. In the *Beam* case the court said at page 549 :

''. . . The conveyances here in suit transfer 'out of our land owner's royalty an undivided 3/5 of 1 per cent in and to any and all oil . . . produced and saved from any wells to be drilled.' The land owner's royalty was in the nature of a rental paid by the lessees for the privilege of drilling for and extracting oil from the land. (*Acme Oil & Min. Co.* v. *Williams,* 140 Cal. 681, 684 [74 P. 296].) Thus in selling a portion of their land owner's royalty in any and *all* oil produced or saved from *any wells to be drilled* upon 'any of the land described,' the vendors were selling an interest in their right as owners of the land to take and receive rental by way of a royalty upon all oil which might be produced. But the conveyances do not limit the rights of the vendees to the royalty paid under the first lease to Dumas. That lease seems to have been mentioned in the conveyances for the single purpose of conferring upon the vendees the right to participate in the royalties paid under that lease upon oil which might be produced from lands covered by the lease but not held in fee by the grantors.

''The evidence discloses without conflict that it was a well-recognized custom in the community to refer to 'land own-

er's royalty' as a perpetual interest not limited to any particular lease and that, when an interest in a royalty limited to a particular lease was dealt with such interest was commonly referred to as 'an overriding royalty.' Adopting the well-known rule of construction that a conveyance of this character must be construed most strictly against the grantor it would seem that the intention of the parties was that the conveyances covered royalties to be paid upon any oil produced from the land, irrespective of under what lease such oil may be produced, otherwise it would have been a simple matter for the grantors to follow the customary course of expressly limiting the rights of the vendees to the royalties to be paid under the existing lease.''

The trial court in the case at bench filed a memorandum opinion which was an able analysis of the facts of the case and the principles of law involved. Because such opinions are always helpful to an appellate court we quote the following therefrom and adopt the same as a part of the opinion of this court:

''The Defendants rely in part upon the case of *Beam* v. *Dugan*, 132 Cal.App. 546 [23 P.2d 58]. Again the primary issue was whether certain conveyances carried a perpetual interest in an oil lease or whether they were limited to the term of the lease. The Court in the *Beam* case felt that the recital of the pre-existing lease in the preamble to the assignment was mentioned for the purpose of conferring upon the assignees the right to participate in the royalties under the existing lease. This is a point which appears in numerous cases where there is a recital of a lease as distinguished from actual language in the granting clauses such as we have in the Donlin assignment.

''Also the *Beam* case states that the evidence before the trial Court indicated a well recognized custom in the community to use the term 'land owner's royalty' as a perpetual interest. This language with its well-defined meaning, was used. It does not appear that there was either any ambiguity in the *Beam* assignment or that there was a situation in which one of the parties occupied a superior bargaining position or a position of superior knowledge in the field.

''Counsel for the Defendants also rely upon and quote extensively from the case of *Dabney-Johnston Oil Corp.* v. *Walden*, 4 Cal.2d 637 [52 P.2d 237]. This entire case was based upon a stipulation which decided the question of perpetual versus limited assignment.

"From a careful examination of the authorities, the Court has been unable to find any case in which language similar to that in the Donlin assignment was used. The dual reference to the Union Oil Company's lease, both in the designation of the royalty interest and in the phrase following the property description, take this assignment out of the class of cases where there is a mere recital of a pre-existing lease in the preamble.

"There appears to the Court to be no question that the lease is ambiguous; but apart from various principles of construction which have been referred to, it would appear to be a more logical construction of the assignment to say that it was limited to the Union Oil lease term.

"In addition the language of Civil Code Section 1654 appears to be particularly applicable to this case. This language would resolve ambiguities in favor of the assignor, and against the assignee who prepared the lease and who was an expert in this field.

"Finally, the circumstances under which the assignment was executed and the conversation had with respect thereto, even though that comes to us through the lips of one of the Defendants, would again compel the conclusion that the assignment was limited in term and not perpetual."

We are convinced that the trial court's conclusion that the "Assignment of Royalty" was ambiguous is supported by the record. First, it assigns all the right, title and interest in a portion of the royalty in all oil and gas produced, and then there is language following which reads, "and according to that certain oil and gas lease dated August 26, 1930, given by me to the Union Oil Company. . . ." The second clause creates the ambiguity—it could identify the lease or it could be a limitation. Since there was an ambiguity, it was proper to receive parol evidence to explain the meaning of the instrument. As stated in 1 Kuntz, Law of Oil and Gas, at page 371: "If the deed or other instrument under consideration is ambiguous, then extrinsic evidence may be admitted to show the facts and circumstances surrounding the parties and the execution of the instruments for the purpose of arriving at the true meaning of the instrument and the intention of the parties. . . ." (See also *Dabney-Johnston Oil Corp.* v. *Walden,* 4 Cal.2d 637, 651 [52 P.2d 237]; *Mitchel* v. *Brown,* 78 Cal.App.2d 58 [176 P.2d 957].)

Since an ambiguity existed, it was proper for the court to consider and weigh the parol evidence hereinbefore

referred to. This evidence supports an inference that it was the intent of the parties that the assignment of royalty was limited to the duration of the Union Oil Company lease. All questions as to the weight of the evidence and the credibility of the witnesses are for the trial court. If there is any substantial evidence to support the judgment, it may not be set aside by an appellate tribunal. The power of an appellate court begins and ends with a determination as to whether there is any substantial evidence to support the questioned finding of fact. This rule applies also where the trial court has admitted parol evidence to interpret a document. (*E. K. Wood Lumber Co.* v. *Higgins,* 54 Cal.2d 91 [4 Cal. Rptr. 523, 351 P.2d 795].)

Our conclusion is that the trial court correctly found "That the term of the interest granted to the said Fred G. Emry and Charles E. Walker by said 'Assignment of Royalty' was limited in duration to the term of the Union Oil Company lease which is referred to in said Assignment of Royalty."

No other points require discussion.

The judgment is affirmed.

Pierce, P. J., and Friedman, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied May 14, 1963. Schauer, J., and Peters, J., were of the opinion that the petition should be granted.